**Amos Jimmy JENNINGS, Appellant,**

v.

**UNITED STATES of America,
Appellee.**

**No. 8128.**

United States Court of Appeals
Tenth Circuit.

Aug. 5, 1966.

Judd Black, Oklahoma City, Okl., for appellant.

John E. Green, Asst. U. S. Atty., Oklahoma City, Okl., (B. Andrew Potter, U. S. Atty., Oklahoma City, Okl., with him on the brief), for appellee.

Before MURRAH, Chief Judge, and PHILLIPS and PICKETT, Circuit Judges.

PICKETT, Circuit Judge.

The appellant, Amos Jimmy Jennings, along with six co-defendants was charged by indictment returned in the United States District Court for the Western District of Oklahoma, with conspiracy to violate the Postal Laws of the United States, and with substantive offenses. 18 U.S.C. §§ 371, 641. All of the defendants except Jennings pleaded guilty and were sentenced. At the first trial of Jennings, the jury was unable to reach a verdict. He was convicted on a second trial and appeals from the judgment and sentence entered thereon. It is contended here that the court erred in limiting cross-examination of one of the prosecution's witnesses and that the attorney representing the United States was guilty of prejudicial conduct in the examination of the defense witnesses.

The indictment followed the theft of a quantity of postal money orders from a United States Post Office in Oklahoma, together with equipment used in preparation thereof. After the first trial, postal inspectors interviewed Mary Ellen Roberts, wife of one of the conspirators who was then serving his sentence in a United States penitentiary at Terre Haute, Indiana. Following the interview

she signed a statement which set forth facts implicating the appellant Amos Jennings in the conspiracy and in the cashing of some of the money orders. When called to testify, Mary Ellen was an extremely reluctant witness and announced that any testimony which she could give in the case might tend to incriminate her and that she desired to invoke the protection of the Fifth Amendment to the Constitution of the United States. A lengthy conference was held in the Judge's chambers, at which the court concluded that if Mary Ellen confined her testimony to the contents of her statement it could not incriminate her and that she therefore would be required to testify. She was advised by the court, by her own attorney, and by the attorney for the defendant that she would be guilty of contempt of court if she refused to testify. The trial proceeded, and she continued to be a reluctant witness. In some instances her testimony was contrary to her statement, and for the purpose of impeachment, she was questioned as to her former declarations. On cross-examination the witness was asked to explain her reason for giving the statement. An objection was sustained, whereupon defendant's attorney offered to prove that if the witness were allowed to state why she signed the statement, she would testify "that she was promised by some postal inspector that if she would make the statement incriminating Amos Jennings, the defendant herein, she would be moved to Terre Haute, Indiana, closer to her husband, or her husband would be moved near to Oklahoma City, in order that they could visit", and further that she received special privileges from the postal authorities by reason of having signed the statement.

Ordinarily the trial court has broad discretionary powers in permitting or limiting cross-examination. Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680, reh. denied, Kretske v. United States, 315 U.S. 827, 62 S.Ct. 629, 89 L.Ed. 1222; Alford v. United States, 282 U.S. 687, 51 S.Ct. 218, 75 L.Ed. 624; McManaman v. United States, 10 Cir., 327 F.2d 21; Foster v. United States, 10 Cir., 282 F.2d 222; Wilcoxon v. United States, 10 Cir., 231 F.2d 384, cert. denied 351 U.S. 943, 76 S.Ct. 834, 100 L.Ed. 1469. It is equally well established that in criminal cases great latitude is generally permitted in the cross-examination of a witness for the prosecution in order to test his credibility and to develop facts which may tend to show bias or prejudice or any other motive which the witness may have for giving his testimony. Gordon v. United States, 344 U.S. 414, 73 S.Ct. 369, 97 L.Ed. 447; Alford v. United States, supra; Foster v. United States, supra; United States v. Masino, 2 Cir., 275 F.2d 129; 58 Am.Jur., Witnesses, § 715; Anno. 62 A.L.R.2d 613. In this case, the cross-examination was not directed to the testimony of the witness, but to her former statement which was not admissible in evidence and could be used only for impeachment purposes and not to prove a substantive offense. Brooks v. United States, 10 Cir., 309 F.2d 580. The record discloses that the witness was not disposed to give evidence helpful to the prosecution. Upon cross-examination she testified that she had told the truth on the witness stand and that, regardless of any statement she had previously made to the contrary, or her reasons therefor, she had no knowledge that Jennings participated in the commission of the crimes.[1] If there were any error, it was cured by cross-examination and affected no substantial rights of the accused. A conviction will not be disturbed where the record fails to disclose substantial prejudice from an alleged error. F.R.

---

1. The cross-examination concluded with these questions and answers:
 "Q. By Mr. Freeman: Do you tell this Court and jury that you had no knowledge that Amos had anything to do with it at all? A. I had no knowledge at all of him knowing anything.

 Q. Any statement you might have made to the contrary was not true? A. That's right.
 Q. Now regardless of why you made it, what you said here today is true? A. That's right."

Cr.P. 52(a); Cram v. United States, 10 Cir., 316 F.2d 542; Foster v. United States, supra; Sandquist v. United States, 10 Cir., 115 F.2d 510; Baish v. United States, 10 Cir., 90 F.2d 988.

The defense called as a witness Ruby Lee Cossey and Jerry Don Jennings, sister and brother of the accused. These witnesses pleaded guilty to the crimes charged against them in the indictment and had been sentenced. The substance of their testimony was that Amos had not participated in the alleged crimes. In the cross-examination of Ruby, the prosecution, over objection, was permitted to ask her if, during the first trial of the case, she and her brothers and sisters while in a witness room, had not agreed that they "would try to take all the blame for Amos in this matter." The answer was: "No, Sir." When brother Jerry Don was called as a witness, he was asked on direct examination if he had agreed "with anybody that you were just going to try to protect Amos Jimmy Jennings", the answer was: "No, Sir." On cross-examination Jerry Don admitted that he had been in the witness room during the first trial with his brother William Van and his sister Ruby, but denied that they had any discussion concerning an attempt to take all the blame and clear Amos. No attempt was made to prove that such a discussion was had between the brothers and sisters of the accused. It is urged that the questions were without factual foundation and were prejudicial misconduct on the part of the prosecuting attorney because they were designed to create bias and prejudice in the minds of the jurors.

When a public prosecutor is convinced of the guilt of an accused, the case should be prosecuted with energy and skill but with propriety and fairness. This includes the cross-examination of defense witnesses. In the case at bar, the crimes charged were somewhat of a family affair. All of the relatives who had been indicted pleaded guilty except Amos. During the first trial some of them were together in the witness room. If there was a discussion in that room concerning an agreement to exonerate Amos, it could be ascertained only by inquiry as to what occurred there. The record indicates that the prosecuting attorney knew the answers to his questions would be in the negative. Under the circumstances, regardless of his personal convictions, the better course would have been not to make the inquiries inasmuch as he had no proof of the existence of such an agreement. The action of the prosecuting attorney, however, is not like that in Berger v. United States, 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314, where the conduct of the prosecutor throughout the trial, including cross-examination and argument to the jury, was characterized by the court as "undignified and intemperate, containing improper insinuations and assertions calculated to mislead the jury." The examination here was not protracted and the witnesses were treated with courtesy. We are convinced that such questioning was harmless and had no effect on the outcome of the trial, particularly in view of the fact that defense counsel asked the same question of one of the witnesses upon direct examination. F.R.Cr.P. 52 (a).

Affirmed.