**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Dan B. BUZZARD, Defendant-Appellant.**

**No. 75–1367.**

United States Court of Appeals, Tenth Circuit.

Argued and Submitted Feb. 27, 1976.

Decided Aug. 23, 1976.

Rehearing Denied Sept. 27, 1976.

Marshall G. Martin, Albuquerque, N. M. (Robert W. Harris of Poole, Tinnin, Danfelser & Martin, Albuquerque, N. M., with him on the brief), for appellant.

Michael J. Pugh, Antitrust Div., Dept. of Justice, Washington, D. C., and Robert B. Nicholson, Washington, D. C. (Thomas E. Kauper, Asst. Atty. Gen., Washington, D. C., with them on the brief) for appellee.

Before LEWIS, Chief Judge, and SETH and BARRETT, Circuit Judges.

LEWIS, Chief Judge.

Dan B. Buzzard appeals the judgment and order of the district court for the District of New Mexico confirming a jury verdict finding him guilty of violating section 1

of the Sherman Antitrust Act. Buzzard's conviction arose out of his alleged conspiracy with members of the Retail Liquor Dealers Trade Association of Clovis (Association) to fix the retail prices of liquor sold in Clovis, New Mexico.

James Messer and James Avery began operating a discount package store known as Riley's Switch after acquiring a liquor license for Clovis, New Mexico. Because Riley's Switch was selling beer and liquors at prices below those of other liquor stores in Clovis, the Association allegedly attempted illegally to force or persuade Messer and Avery to increase their prices. Messer and Avery were first visited by Association members and pressured to raise their prices to the levels agreed upon by the Association. On January 5, 1973, Messer and Avery, surreptitiously wearing voice transmitters monitored by the police, attended a meeting of the Association at the Clovis Hotel. At the meeting the Association members allegedly discussed the price-fixing arrangement, explained the markups and again pressed Messer and Avery to join the conspiracy to fix prices. After the meeting the local police, with Messer's consent, placed a recording device on his telephone.

On January 9, 1973, three members of the Association visited Buzzard in his law offices. They advised him that the Association had just had a meeting and all the members agreed to engage in retaliatory price cutting against Messer and Avery if they did not go along with the Association. The three requested Buzzard to represent the Association in contacting Messer and Avery to seek their compliance. That evening Buzzard called Avery to inform him of the discussions with members of the Association. Avery said he would have to talk to Messer. Avery then called Messer and suggested that Messer return the call to Buzzard and record it. The resulting tape recording of the Buzzard-Messer conversation was the primary evidence against Buzzard in his trial for violation of the antitrust laws.[1]

1. Significant portions of the Buzzard-Messer conversation bearing on Buzzard's participation in the conspiracy follow:

Buzzard speaking:
Yeah, all of them met today at noon. And then the three men came to me as I told Mr. Avery; Mr. Wolf, Mr. Pettigrew, and Mr. Goodman and said, say we can't stand this cutting deal. It's bad for all of us and we can't do anything but compete that and this—then they went through all these computations that they gave to you at the Hotel Clovis.

Buzzard speaking:
[T]hey can put up a hell of an argument that their 40 and 45 [markup] is legitimately the way to operate . . . . And I don't want a price war and I am controlling it up to this point I can tell you that . . . . .

Buzzard speaking:
Let me ask you this. I had this proposal from Kit before I talked with the three at 1:30 and he said . . . uh, it's alright with me for them to go ahead with their 30% markup, until they get in their new building.

Messer speaking:
And they want us to come up to their prices.
Buzzard speaking:
Yeah, they'd like that. They think that's the best interest of you and they think it's the best interest of them.

Messer speaking:
Next point, uh, no one tells Dan Buzzard or Richard Snell how much they're going to charge for a divorce case. Uh—
Buzzard speaking:
Well, they have a minimum fee schedule, Doctor, probably violates—
Messer speaking:
We do?
Buzzard speaking:
We do, Mr. Snell and I and probably every other lawyer in town probably violates the antitrust laws.

Buzzard speaking:
I'd like to be able to say, well, uh, I'd like for you to say let's figure on it. Let me talk to Crawford and uh, even Johnnie Mack and see if I could get a consensus with these gentlemen. That's all I want.

Buzzard speaking:
I'm just going to visit with you, because perhaps, well, here's the deal. I told them not to be popping off about, uh, business, because I figured it would violate the anti-trust laws, but if anybody was going to do the popping off, I would.
Messer speaking:
Uh, huh.
Buzzard speaking:
See, cause I don't want them hauled into Grand Juries, and if I am, why, uh, that's my business.

The tape recording of the Buzzard-Messer telephone call was given to the Clovis Police Department the morning after the call. Subsequently, members of the Association and Buzzard were indicted for violations of section 1 of the Sherman Antitrust Act. Buzzard's first jury trial terminated when the trial court granted his motion for a mistrial because of Government attorney misconduct. Buzzard's second jury trial resulted in a verdict of guilty, which was confirmed by the trial court's judgment.

Buzzard appeals alleging the trial court erred in admitting the Buzzard-Messer recording, in instructing the jury regarding that tape recording, and in denying the motion to dismiss because of double jeopardy. Allegedly the court also erred in denying the motion for acquittal because of variance between the bill of particulars and the Government's proof at trial, failure to establish subject matter jurisdiction, and insufficient evidence.

■ Buzzard contends that the court erred in permitting the taped Buzzard-Messer conversation to be admitted as evidence. The admissibility of a taped conversation rests within the sound discretion of the trial judge. *United States v. Hodges,* 10 Cir., 480 F.2d 229, 233–34; *United States v. Knohl,* 2 Cir., 379 F.2d 427, 440, *cert. denied,* 389 U.S. 973, 88 S.Ct. 472, 19 L.Ed.2d 465. The district court prior to admitting the tape allowed extensive testimony and briefing regarding its authenticity and completeness. At trial Buzzard presented testimony proving the theoretical electronic possibility of erasure, that certain police officials with keys to where the tape was placed may have held an animus toward Buzzard and that the tape was only 26 minutes long despite Messer's notation on the tape that it

Messer speaking:
Uh, huh.
Buzzard speaking:
And my problem, but I don't want my clients, so that's probably why I'm doing the talking.
.   .   .

Messer speaking:
But in all fairness to them I won't come—The main thing that Crawford wants, Crawford has

lasted 29 minutes. Buzzard's contention is that the tape was intentionally manipulated to effect the erasure of a key 3-minute portion which included exculpatory statements by him.

■ We hold the trial court to be within its discretion in determining there was sufficient evidence to admit the tape. Messer testified the recording was complete. Lt. Chandler, who retrieved the tape from Messer and listened to it the day after its recording, also testified that the tape, as presented at trial, was complete. We note that Buzzard was allowed to present in detail his arguments to the jury regarding the authenticity and completeness of the tape.

■ Buzzard alleges the trial court erred in failing to give his proffered instruction that the jury should scrutinize the tape with care because of the conflicting evidence regarding its authenticity and completeness. The court merely instructed the jury that you "should consider the tape recordings just as you would any other testimony or evidence put before you" and "not give it any value weight because it is a tape recording." The trial court elsewhere instructed the jury as follows:

At times, throughout the trial, I have been called upon to pass on the question whether or not certain offered evidence might properly be admitted. You are not to be concerned with the reasons for such ruling and are not to draw any inferences from them. Whether offered evidence is admissible is purely a question of law. In admitting evidence to which an objection is made, I do not determine what weight should be given such evidence; nor do I pass on the credibility of the witness.

bugged me several times, is for me to come up to a dollar for we, Avery and Messer, to come up to a $1.50 on the beer and uh, we won't do it and I think in all fairness, you ought to tell them that.
Buzzard speaking:
Alright, I'll tell them that. While you're at it, do you want it forever or do you want it while you're in the garage. Why don't you give me a little lee-way there?

You are the sole judges of the credibility of all of the witnesses and the weight their testimony deserves. You should carefully scrutinize every matter in evidence which tends to indicate whether a witness is worthy of belief.

The record also reflects that with the exception of an alleged three-minute gap, there was no evidence throwing doubt on the tape's authenticity or completeness. In the context of this lengthy trial presentation regarding the possibility of a three-minute gap, we hold the instructions were not erroneous when considered as a whole. Buzzard's proffered instruction, while it was directed specifically at the tape, does not differ from the standard the court instructed the jury to utilize concerning the credibility or weight to be assigned all evidence and testimony.

■ Buzzard argues that this trial should have been barred under double jeopardy principles because prosecutorial error caused an earlier trial to result in a mistrial. Buzzard's motion for mistrial was granted after Government counsel asked Avery two questions:

Q. Now, just one more question, I hope, Mr. Avery, Did you subsequently learn that these sales to minors, that you had been set up for these sales to minors by members of the Clovis Retail Liquor Association?

A. Yes, Mr. Goodman informed me that it was a form of entrapment, in which he had participated, that he caused it, he said.

Q. Now, is that the same Mr. Goodman that Mr. Buzzard had been representing?

A. Yes.

After the trial court granted his motion for a mistrial, Buzzard moved to dismiss the indictment on double jeopardy grounds. The trial court in denying that motion discussed the nature of the prosecutorial error:

The prosecution had no evidence to tie Buzzard to this incident. The question was highly improper. The incident was aggravated by previous prosecutorial suggestive or leading questions. The prose-

cutor's error here was caused by overzealousness and inexperience in trial. It was substantially accidental and was not intended to inflame the jury against the accused. This in my opinion, falls short of the type of overreaching that might bar retrial.

In *United States v. Jorn,* the Supreme Court stated the applicable rule that

where circumstances develop not attributable to *prosecutorial or judicial overreaching,* a motion by the defendant for mistrial is ordinarily assumed to remove any barrier to reprosecution, even if the defendant's motion is necessitated by *prosecutorial or judicial error.*

400 U.S. 470, 485, 91 S.Ct. 547, 557, 27 L.Ed.2d 543 (footnote omitted, emphasis added). A footnote to this rule, referring to *United States v. Tateo,* 377 U.S. 463, 468 n.3, 84 S.Ct. 1587, 12 L.Ed.2d 448, further clarifies what the Court felt should constitute a bar to reprosecution:

Conversely, where a defendant's mistrial motion is necessitated by judicial or prosecutorial impropriety designed to avoid an acquittal, reprosecution might well be barred.

400 U.S. 470, 485 n.12, 91 S.Ct. 547, 557, 27 L.Ed.2d 543. In this case the trial court expressly found the prosecutorial error leading to mistrial, accidental and unintentional. Under these circumstances we hold there was no bar to reprosecution.

■ Buzzard alleges the court erred in failing to grant his motion for acquittal because of variance between the Government's proof at trial and the bill of particulars. Having carefully read the bill of particulars pertaining to Buzzard, this court finds minimal variance between the Government's proof at trial and the bill. We hold no material prejudice resulted from such variance. We note that "variance between the proof and the bill of particulars is not grounds for reversal unless the appellant is prejudiced by the variance." *United States v. Glaze,* 2 Cir., 313 F.2d 757, 759 (citing *United States v. Burgos,* 2 Cir., 269 F.2d 763, 767–68, *cert. de-*

*nied,* 362 U.S. 942, 80 S.Ct. 808, 4 L.Ed.2d 771).

■ Buzzard also urges the court erred in failing to grant his motion of acquittal because the Government failed to establish the court's subject matter jurisdiction by showing a restraint of interstate commerce. We are satisfied from the record that the impact of the conspiracy upon interstate commerce has been adequately proved. This is not a "warehouse case" where the subject matter completes its interstate nature by coming to rest in warehouses within the state. The flow of liquor here considered is directed and determined by retailers, wholesalers and manufacturers' representatives acting in close conjunction each with the other. Clovis is a border city serving customers from adjoining states in not inconsiderable quantities.[2]

It is also urged that the court erred in allowing evidence on this issue beyond the scope of the indictment. Buzzard alleges the indictment only charges the conspiracy with acting upon transactions within the flow of interstate commerce,[3] and that therefore, the government's proof relating to the conspiracy's effect on interstate commerce should have been excluded.

This court, considering the charge as a whole, is not persuaded that it would limit the Government to proving the conspiracy acted upon transactions in the flow of interstate commerce. The Government could properly introduce evidence relating to the conspiracy's effect upon interstate commerce. In judging the sufficiency of an indictment this court

> views the entire document to ascertain whether the offense is charged with sufficient clarity so as to safeguard two constitutional guarantees: the Sixth Amendment right to be informed of the nature and cause of the accusation in order to prepare a defense; and the Fifth Amendment protection against twice being placed in jeopardy for the identical offense.

*United States v. Wilshire Oil Co.,* 10 Cir., 427 F.2d 969, 972, *cert. denied,* 400 U.S. 829, 91 S.Ct. 58, 27 L.Ed.2d 59 (footnotes omitted). Buzzard was adequately informed of the nature of the charge and is sufficiently protected from the possibility of double jeopardy.

Buzzard also argues the court erred in denying his motion for acquittal because of insufficient evidence that he joined the price fixing conspiracy. This appellate court is required, in reviewing the sufficiency of evidence to sustain a verdict of guilty, to consider all the evidence in the light most favorable to the prosecution. *United States v. Freeman,* 10 Cir., 514 F.2d 1184, 1187; *United States v. Swallow,* 10 Cir., 511 F.2d 514, 517, *cert. denied,* 423 U.S. 845, 96 S.Ct. 82, 46 L.Ed.2d 66. We hold the evidence so considered was sufficient to sustain the guilty verdict and the trial court did not err in confirming that judgment.

It is also alleged that the trial court erred in allowing repetitive questions which wore down and badgered Buzzard into mak-

---

**2.** See note 3 *infra.*

**3.** The indictment's charge as to the character and substance of interstate commerce was that:

> The defendant corporations and proprietorships sell alcoholic beverages by the bottle and/or by the drink in Clovis, New Mexico. Virtually all alcoholic beverages sold by these companies are imported from outside of the State of New Mexico by wholesalers. These wholesalers receive shipments of liquor, beer, and wine from such states as Kentucky, Illinois, Tennessee, Colorado, California, Texas, and New York. Distribution involves a rapid turnover of product and distributor inventories are based on demands of the market. Sales representatives of distillers and brewers work in conjunction with wholesale salesmen in servicing the retail trade. The defendants are engaged in interstate commerce.
>
> Clovis, New Mexico is the only city in Curry and Roosevelt Counties, New Mexico and adjoining counties in Texas in which alcoholic products may legally be sold. A substantial number of customers are attracted from these dry counties of Texas into Clovis for the sale of alcoholic beverages.
>
> In 1972, alcoholic beverages having a wholesale value of $1,833,000 were sold to Clovis alcoholic beverage retailers. It is estimated that sales by Clovis alcoholic beverage retailers exceeded $3 million in 1972.

ing prejudicial admissions. Such trial court rulings will be disturbed by this court on appeal only if they are clearly erroneous and only then if the error deprived the defendant of a substantial right. *Jennings v. United States,* 10 Cir., 364 F.2d 513, 515, *cert. denied,* 385 U.S. 1030, 87 S.Ct. 760, 17 L.Ed.2d 677. This ruling is not clearly erroneous.

Affirmed.