373 A.2d 90
**COMMONWEALTH of Pennsylvania**
v.
**Richard BOLDEN, Appellant.**

Supreme Court of Pennsylvania.
Argued April 1, 1976.
Decided April 28, 1977.

604

606

608

———◆———

Thomas A. Livingston, John L. Doherty, James K. O'Malley, Pittsburgh, for appellant.

Jess D. Costa, Dist. Atty., Samuel L. Rodgers, First Asst. Dist. Atty., Washington, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION

ROBERTS, Justice.

Appellant Richard Bolden was brought to trial on January 21, 1976 for the murder of Robert (Tim) Indyk. After the jury was sworn and empaneled, a mistrial was ordered on appellant's motion. Prior to commencement of a second trial, appellant moved to dismiss the indictment, claiming that a second prosecution would violate his constitutional right not to be placed twice in jeopardy.[1] This motion was denied and appellant seeks review in this Court.

We hold that the denial of a pre-trial application to dismiss an indictment on the ground that the scheduled trial will violate the defendant's right not to be placed twice in jeopardy may be appealed before the new trial takes place. Once a defendant is erroneously subjected to another prosecution, neither an acquittal nor appellate reversal of a conviction is sufficient to vindicate his constitutional right not to be placed twice in jeopardy. We conclude that the right to be free from multiple prosecution, embodied in the double jeopardy clause, can be adequately protected only by permitting an immediate appeal from a trial court's denial of relief. As Mr. Chief Justice Burger has observed, a criminal prosecution "imposes heavy pressures and burdens . . . on a person charged. The purpose of the Double Jeopardy Clause is to require that he be subject to the experience only once 'for the same offense.' "[2]

On the merits, appellant asserts that his request for a mistrial during the first trial was necessitated by serious prosecutorial and judicial misconduct and that retrial would violate the double jeopardy clause. We find no

1. U.S. Const., amendments V, XIV; Pa.Const. art. I, § 10.
2. *Breed v. Jones,* 421 U.S. 519, 530, 95 S.Ct. 1779, 1786, 44 L.Ed. 2d 346 (1975).

prosecutorial or judicial overreaching in the first proceeding and conclude that the double jeopardy clause is no barrier to a new trial. Accordingly, we affirm the trial court's order denying appellant's motion to dismiss and remand for trial.

I

The threshold question in this appeal is whether this Court has jurisdiction to hear an appeal from a defendant's pre-trial motion to dismiss an indictment on double jeopardy grounds.

The Appellate Court Jurisdiction Act of 1970 provides this Court with exclusive jurisdiction of appeals from "final orders of the courts of common pleas" in felonious homicide cases.[3] Generally, a criminal defendant may appeal only from a judgment of sentence. E. g., *Commonwealth v. Sites*, 430 Pa. 115, 242 A.2d 220 (1968). This rule prevents undue delay and avoids the disruption of criminal cases by piecemeal appellate review. See generally *Cobbledick v. United States*, 309 U. S. 323, 60 S.Ct. 540, 84 L.Ed. 783 (1940); *In re Grand Jury Proceedings*, 525 F.2d 151 (3d Cir. 1975). However, this Court has recognized that the final judgment rule is neither absolute nor inflexible. An appeal before judgment of sentence will be permitted when the need for immediate review outweighs the purposes of the final judgment rule. See ABA Project on Standards for Criminal Justice, Standards Relating to Criminal Appeals § 1.3(b), commentary (d) (Approved Draft, 1970).

In *Commonwealth v. Washington*, 428 Pa. 131, 136, 236 A.2d 772, 775 (1968), this Court stated:

"Onto the general rule that orders entered in a criminal case prior to final judgment are not appealable by the defendant this Court has engrafted an exception for cases presenting exceptional circumstances."

**3.** Act of July 31, 1970, P.L. 673, art. II, § 202, 17 P.S. § 211.202 (Supp.1976).

Exceptional circumstances exist

". . . (1) where an appeal is necessary to prevent a great injustice to the defendant, or (2) where an issue of basic human rights is involved, or (3) where an issue of great public importance is involved."

*Commonwealth v. Swanson*, 424 Pa. 192, 194, 225 A.2d 231, 232 (1967) (per Bell, C. J., for a unanimous Court); accord, *Commonwealth v. Bruno*, 424 Pa. 96, 225 A.2d 241 (1967); *Commonwealth v. Byrd*, 421 Pa. 513, 219 A.2d 293 (1966).

Our case law permits appeals prior to judgment of sentence when an immediate appeal is necessary to vindicate the right asserted by the defendant.[4] *Commonwealth v. Leaming*, 442 Pa. 223, 275 A.2d 43 (1971) (nolle prosequi order appealable where defendant asserted violation of right to a speedy trial); accord, *Commonwealth v. Reinhart*, 466 Pa. 591, 353 A.2d 848 (1976); see *Commonwealth v. Bunter*, 445 Pa. 413, 282 A.2d 705 (1971) (plurality opinion) (motion to quash indictment due to asserted violation of right to a speedy trial appealable). Before an appeal is quashed as interlocutory, this Court must determine that the defendant's rights will not be forfeited by delaying appellate review.[5] Thus, un-

---

4. Where an issue of public importance is involved, we have found exceptional circumstances notwithstanding the fact that the defendant's rights could be redressed by a later appeal. Compare *Commonwealth v. Kilgallen*, 379 Pa. 315, 108 A.2d 780 (1954) with *Commonwealth v. Myers*, 457 Pa. 317, 322 A.2d 131 (1974) and *Commonwealth v. Washington*, 428 Pa. 131, 236 A.2d 772 (1968).

5. *Commonwealth v. Myers*, 457 Pa. 317, 322 A.2d 131 (1974) (order denying motion to dismiss indictment due to lack of speedy trial not appealable); *Commonwealth v. Cole*, 437 Pa. 288, 263 A.2d 339 (1970) (order granting new trial and denying motion in arrest of judgment not appealable); *Commonwealth v. Washington*, 428 Pa. 131, 236 A.2d 772 (1968) (order denying motion to suppress statement allegedly obtained in violation of *Miranda* not appealable); *Commonwealth v. Pollick*, 420 Pa. 61, 215 A.2d 904 (1966) (ordering denying motion to discharge defendant due to insufficient evidence not appealable). In each of these cases, this Court explicitly concluded that the appellant's rights could be vindicated in a later appeal.

der the final judgment rule and the Appellate Court Jurisdiction Act, "[t]he finality of an order is a judicial conclusion which can be reached only after an examination of its ramifications." *Bell v. Beneficial Consumer Discount Co.*, 465 Pa. 225, 228, 348 A.2d 734, 735 (1975). The exceptional circumstances doctrine follows the principle "that a finding of finality must be the result of a practical rather than a technical construction." [6] Id. The exceptional circumstances doctrine requires that an appeal be permitted when immediate resolution of the controversy is necessary to protect the defendant's rights.

In this respect, Pennsylvania practice is in accord with federal law. While the final judgment rule is the general rule in federal practice, various exceptions have been created. 9 J. Moore, Federal Practice ¶ 110.08[1], at 112 (2d ed. 1975).

One important exception was set out in *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). The Supreme Court held that an order is appealable under 28 U.S.C.A. § 1291 (1966)[7] when the appellant's claim is

"separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated."

Id. at 546, 69 S.Ct. at 1225–26.

In *DiBella v. United States*, 369 U.S. 121, 126, 82 S.Ct. 654, 657, 7 L.Ed.2d 614 (1962), the Court reaffirmed the

6. Accordingly, we have held that the Commonwealth may appeal certain pre-trial suppression orders in criminal cases. E. g., *Commonwealth v. Smith*, 463 Pa. 393, 344 A.2d 889 (1975). See generally *Commonwealth v. Bosurgi*, 411 Pa. 56, 190 A.2d 304, cert. denied, 375 U.S. 910, 84 S.Ct. 204, 11 L.Ed.2d 149 (1963).

7. Section 1291 provides: "The courts of appeals shall have jurisdiction of appeals from all final decisions of the district courts of the United States . . . .''

principle that immediate review is proper when "the practical effect of the order will be irreparable by any subsequent appeal." Accord, *United States v. Ryan*, 402 U.S. 530, 533, 91 S.Ct. 1580, 1582, 29 L.Ed.2d 85 (1971) (dictum); see *Stack v. Boyle*, 342 U.S. 1, 72 S.Ct. 1, 96 L.Ed. 3 (1951) (order denying motion to reduce bail is a final decision appealable under 28 U.S.C.A. § 1291 (1966)). See also 18 U.S.C.A. § 3147 (1969).

Applying this principle, the Second, Third, Fourth and Eighth Circuit Courts of Appeals have held that the denial of a defendant's double jeopardy claim is a "final decision" within the meaning of 28 U.S.C.A. § 1291 (1966) and may be appealed prior to judgment of sentence. *United States v. Alessi*, 536 F.2d 978 (2d Cir. 1976); *United States v. MacDonald*, 531 F.2d 196 (4th Cir. 1976) (dictum), petition for cert. filed 45 U.S.L.W. 3005 (U.S., June 29, 1976) (No. 75-1892); *United States v. Barket*, 530 F.2d 181 (8th Cir. 1975), cert. denied, 429 U.S. 917, 97 S.Ct. 308, 50 L.Ed.2d 282 (1976); *United States v. DiSilvio*, 520 F.2d 247 (3d Cir.), cert. denied, 423 U.S. 1015, 96 S.Ct. 447, 46 L.Ed.2d 386 (1975); *United States v. Lansdown*, 460 F.2d 164 (4th Cir. 1972). Contra, *United States v. Young*, 544 F.2d 415 (9th Cir. 1976), cert. denied, 97 S.Ct. 643, 50 L.Ed. 2d 626 (1976); *United States v. Bailey*, 512 F.2d 833 (5th Cir.), cert. dismissed, 423 U.S. 1039, 96 S.Ct. 578, 46 L.Ed.2d 415 (1975); *Gilmore v. United States*, 264 F.2d 44 (5th Cir.), cert. denied, 359 U.S. 994, 79 S.Ct. 1126, 3 L.Ed.2d 982 (1959).[8]

Thus, the issue presented is whether a defendant's rights under the double jeopardy clause are adequately

---

8. In these cases, the courts construed the federal appeals statute, 28 U.S.C.A. § 1291 (1966), to allow appeal of double jeopardy claims before trial. Although these decisions in no way bind this Court, the policies underlying the final judgment rule are the same in the federal and state systems. Thus, we find the analysis in the decisions helpful in construing 17 P.S. § 211.204 (Supp. 1976).

protected if he must first undergo another trial before receiving appellate review of his constitutional claim. This in turn requires an examination of the purposes of and interests served by the double jeopardy clause. If the clause is designed to protect an individual from having to stand trial, not just to bar conviction, appellate review after judgment of sentence will not adequately protect appellant's rights. Under Pennsylvania law, "exceptional circumstances" would then exist and a defendant should be permitted to appeal the denial of an application to dismiss before the new trial takes place.[9]

## II

### A

The principle that no one shall be put twice in jeopardy for the same offense "is one of the oldest ideas found in western civilization." *Bartkus v. Illinois*, 359 U.S. 121, 151, 79 S.Ct. 676, 696, 3 L.Ed.2d 684 (1959) (Black, J., dissenting). Its roots can be traced to classical

9. The Commonwealth asserts that this Court's decision in *Commonwealth v. Warfield*, 424 Pa. 555, 227 A.2d 177 (1967) is controlling. This reliance is misplaced. When *Warfield* was decided, the double jeopardy provision of the fifth amendment of the United States Constitution was not binding on the states, see notes 12 & 24, infra, and the double jeopardy provision of the Pennsylvania Constitution did not apply to all criminal offenses. Thus, the reasons for permitting immediate appeal of the highly circumscribed right involved at the time were not compelling. Since *Warfield*, however, the protections afforded by the double jeopardy clause have been significantly enhanced. Moreover, we note that *Warfield* failed to express the view of a majority of this Court, and quashed the defendant's appeal only after recognizing that the state double jeopardy clause did not apply to the offense involved in the defendant's appeal. Finally, this Court has impliedly recognized that a pre-trial claim that a prosecution is barred by the double jeopardy clause merits immediate appellate review. See *Commonwealth ex rel. Walton v. Aytch*, 466 Pa. 172, 352 A.2d 4 (1976) (appeal from denial of a state writ of habeas corpus prior to the commencement of reprosecution); *Commonwealth v. Stewart*, 456 Pa. 447, 317 A.2d 616 (same), cert. denied, 417 U.S. 949, 94 S.Ct. 3078, 41 L.Ed.2d 670 (1974).

antiquity.[10] The origins of the protection against double jeopardy in American law are found in English common law. In England, the principle matured into the four common law pleas of autrefois acquit, autrefois convict, autrefois attaint and former pardon. See J. Sigler, Double Jeopardy 4–20 (1969) [hereinafter cited as Sigler]. Blackstone wrote that the principle "that no man is to be brought into jeopardy of his life, more than once, for the same offence" was a "universal maxim of the common law of England." [11]

In the United States, the double jeopardy principle was elevated to constitutional status.[12] The first ver-

10. In 355 B.C. Demosthenes said:
 "[T]he laws forbid the same man to be tried twice on the same issue, be it a civil action, a scrutiny, a contested claim, or anything else of the sort."
 1 Demosthenes 589 (Vance trans. 1962), quoted in *United States v. Jenkins,* 490 F.2d 868, 870 (2d Cir. 1973) (per Friendly, J.), aff'd, 420 U.S. 358, 95 S.Ct. 1006, 43 L.Ed.2d 250 (1975). The double jeopardy principle later found expression in the Digest of Justinian as "the governor should not permit the same person to be again accused of crimes of which he has been acquitted." Diges' of Justinian, Bk. 48, title 2, n. 7, translated in S. Scott, The Civil Law 17 (1932).
 Canon law which began its development at the close of the Roman Empire also opposed placing a person twice in jeopardy. J. Sigler, Double Jeopardy 3 (1969) [hereinafter cited as Sigler].
 "This position was based upon a reading given by St. Jerome in 391 A.D. to I Nahum 9 . . . 'there shall not rise up a double affliction.' "

11. 4 W. Blackstone, Commentaries * 335–36. The scope of the protection afforded by the double jeopardy principle in Blackstone's day was restrictive compared to contemporary notions. See Sigler, supra at 16–20; Note, Double Jeopardy: The Reprosecution Problem, 77 Harv.L.Rev. 1272, 1273 (1964).

12. U.S.Const., amendment V: "[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb . . . ." The federal provision was held applicable to the states through the fourteenth amendment in *Benton v. Maryland,* 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969).
 The American formulation of the principle began in the Massachusetts colony. The Body of Liberties of Massachusetts, Cl. 42 (1641) reads: "No man shall be twise sentenced by Civill Justice for one and the same Crime, offence or Trespasse," quoted in *Bartkus v. Illinois,* 359 U.S. 121, 153 n. 7, 79 S.Ct. 676, 697 n. 7, 3 L.Ed.2d 684 (1959) (Black, J., dissenting). The Massachusetts

sion of the double jeopardy clause introduced by James Madison in the House of Representatives read: "No person shall be subject, except in cases of impeachment, to more than one punishment or one trial for the same offence." 1 Annals of Cong. 434 (1789). The debate which followed evidenced concern that Madison's language might work a change in existing law.[13] In the end, Congress adopted the reputable, if less clear, common law phraseology. Judge Friendly has suggested that "the draftsmen of the Bill of Rights intended to import into the Constitution the common law protections much as they were described by Blackstone." *United States v. Jenkins,* 490 F.2d 868, 873 (2d Cir. 1973), aff'd, 420 U.S. 358, 95 S.Ct. 1006, 43 L.Ed.2d 250 (1975). However, American law has not, in fact, limited the scope of the protection afforded by the double jeopardy clause to that espoused by Blackstone.[14] Moreover, one scholar notes that:

"[t]he state of English law at the time when the American Constitution was written [in order] to preserve the rights which Englishmen had traditionally enjoyed, does not permit the evaluation of double jeo-

Code of 1648 provided that "everie Action . . . in criminal Causes shall be . . . entered in the rolls of everie Court . . . that such Actions be not afterwards brought again to the vexation of any man," quoted in Sigler, supra at 23. Other colonies were influenced by the Massachusetts Code. See Ewing & Haskins, The Spread of Massachusetts Law in the Seventeenth Century, 106 U.Pa.L.Rev. 413 (1958). For a brief history of double jeopardy in colonial and pre-Constitution America, see Sigler, supra at 21–27.

13. Madison's wording called for a single trial for a single offense. Representative Benson objected on the ground that it might prohibit a second trial, even when sought by a defendant who had been convicted. 1 Annals of Cong. 759 (1789). For a discussion of the legislative history of the double jeopardy clause, see *United States v. Wilson,* 420 U.S. 332, 340–42, 95 S.Ct. 1013, 1020–21, 43 L.Ed.2d 232 (1975).

14. For example, double jeopardy is not limited to felony cases, nor is a prior verdict of guilt or innocence a necessity. Sigler, supra at 20.

pardy as a clearly established fundamental restriction upon the organized power of the executive. Even in the writings of Coke the immutability of the doctrine was not fixed. It had not attained the significance of certain other rights."

Sigler, supra at 21.

At the time the fifth amendment was adopted, the double jeopardy principle found expression in the maxim *nemo debat bis vexari pro una et eadem causa* ("It is a rule of law that a man shall not be twice vexed for one and the same cause.").[15] As such, the double jeopardy clause embodied a moral sentiment whose meaning would be revealed only through the application of its underlying policies to specific contexts. These policies have been concisely summarized as follows:

"First, guilt should be established by proving the elements of a crime to the satisfaction of a single jury, not by capitalizing on the increased probability of conviction resulting from repeated prosecutions before many juries. Thus reprosecution for the same offense is prohibited. Second, the prosecution should not be able to search for an agreeable sentence by bringing successive prosecutions for the same offense before different judges. Thus reprosecution after a conviction is prohibited. Third, criminal trials should not become an instrument for unnecessarily badgering individuals. Thus the Constitution forbids a second trial —a second jeopardy—and not merely a conviction at the second trial. Finally, judges should not impose multiple punishment for a single legislatively defined offense. Thus multiple punishment for the same offense at a single trial is prohibited."

Note, Twice in Jeopardy, 75 Yale L.J. 262, 266–67 (1965) (footnotes omitted) [hereinafter cited as Twice in Jeopardy]; see *Commonwealth v. Mills,* 447 Pa. 163,

15. Id. Sigler suggests that the status of the double jeopardy principle did not extend beyond its acceptance as a maxim.

286 A.2d 638 (1971). In *United States v. Wilson*, 420 U.S. 332, 95 S.Ct. 1013, 43 L.Ed.2d 232 (1975), the Court stated that the double jeopardy clause

" 'protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense.' "

Id. at 342–43, 95 S.Ct. at 1021, quoting *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed. 2d 656 (1969). See generally 18 Pa.C.S.A. §§ 109–10 (1973).

Double jeopardy also shares the purposes of the civil law rules of finality: (1) protecting parties and the courts from the expense of unnecessary litigation due to retrial of previously adjudicated issues; (2) protecting parties from the harassment of repeated litigation, permitting them to consider the matter closed and plan their lives without the threat of subsequent litigation arising out of the same transaction. See Note, Statutory Implementation of Double Jeopardy Clauses: New Life for a Moribund Constitutional Guarantee, 65 Yale L.J. 339, 340–41 (1956).

In short, the constitutional prohibition against double jeopardy represents two fundamental and distinct protections: that no person should be harassed by successive prosecutions for a single wrongful act and that no person should be punished more than once for the same offense.[16] Id. at 339–40; see *Commonwealth v.*

---

16. These distinct policies need not operate in the same case. "An accused may be subject to the harassment of successive prosecutions without ever being convicted, in which case the problem of multiple punishment never arises. On the other hand, as a result of a single prosecution he may be found guilty of, and punished for, several offenses where his acts should only give rise to a single criminal liability." Note, Statutory Implementation of Double Jeopardy Clauses: New Life for a Moribund Constitutional Guarantee, 65 Yale L.J. 339, 341 (1956) (footnote omitted).

*Campana*, 452 Pa. 233, 241–42 n. 5, 304 A.2d 432, 435 n. 5 (plurality opinion), vacated, 414 U.S. 808, 94 S.Ct. 73, 38 L.Ed.2d 44 (1973), reinstated on remand, 455 Pa. 622, 314 A.2d 854, cert. denied, 417 U.S. 969, 94 S.Ct. 3172, 41 L.Ed.2d 1139 (1974); Sigler, supra at 222; Twice in Jeopardy, supra at 267 and authorities cited at n. 19.

## B

Application of the constitutional command to specific cases is often a difficult task. The leading cases construing the double jeopardy clause have emphasized that its purpose is to prevent the retrial itself, not merely conviction and punishment. As Justice Black wrote for the majority in *Green v. United States*, 355 U.S. 184, 187, 78 S.Ct. 221, 223, 2 L.Ed.2d 199 (1957):

"The underlying idea, one that is deeply ingrained in at least the Anglo-American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty."

Courts have continually turned to this influential passage for guidance in construing the double jeopardy clause. E. g., *United States v. Dinitz*, 424 U.S. 600, 605, 96 S.Ct. 1075, 1079, 47 L.Ed.2d 267 (1976); *Serfass v. United States*, 420 U.S. 377, 387–88, 95 S.Ct. 1055, 1062, 43 L. Ed.2d 265 (1975); *United States v. Jenkins*, 420 U.S. 358, 370, 95 S.Ct. 1006, 1013, 43 L.Ed.2d 250 (1975); *United States v. Wilson*, 420 U.S. 332, 343, 95 S.Ct. 1013, 1022, 43 L.Ed.2d 232 (1975); *United States v. Jorn*, 400 U.S. 470, 479, 91 S.Ct. 547, 555, 27 L.Ed.2d 543 (1971) (plurality opinion of Harlan, J.); *Benton v. Maryland*, 395 U.S. 784, 795–96, 89 S.Ct. 2056, 2063, 23 L.Ed.2d 707

(1969); *Abbate v. United States,* 359 U.S. 187, 199, 79 S.Ct. 666, 673, 3 L.Ed.2d 729 (1959) (opinion of Brennan, J.); *United States v. Kessler,* 530 F.2d 1246, 1253–54 (5th Cir. 1976); *United States ex rel. Webb v. Court of Common Pleas,* 516 F.2d 1034, 1040 (3d Cir. 1975); *United States ex rel. Russo v. Superior Court,* 483 F.2d 7, 12 (3d Cir.), cert. denied, 414 U.S. 1023, 94 S.Ct. 447, 38 L.Ed.2d 315 (1973); *United States v. Lansdown,* supra, 460 F.2d at 171.

Situations which implicate the policy against multiple prosecution include:

(1) reprosecution after final judgment is reached in previous trial;[17]

(2) reprosecution after the first trial ends without judgment;

(3) successive prosecutions by different jurisdictions; and

(4) governmental appeal from a trial court's decision in defendant's favor.

In each of these situations, the double jeopardy implications stem from the burdens on the defendant from having to stand trial a second time, not simply from the possibility of conviction or multiple punishment.

1. *Prosecution for same offense after prior final judgment.*

The most straightforward application of the double jeopardy clause arises when a second prosecution is instituted against an individual who has been acquitted or convicted of the same offense in a prior trial. In the

17. Reprosecution after a final judgment is reached can arise in two ways. First, the government may wish to try a defendant a second time after he is awarded a new trial on appeal following his conviction. See note 19, infra and accompanying text. Second, the government may wish to prosecute a second time for an offense arising from the same criminal episode from which the first prosecution arose, under the theory that a different offense is involved. See notes 21 and 22, infra and accompanying text.

seminal case, *Ball v. United States*, 163 U.S. 662, 16 S.Ct. 1192, 41 L.Ed. 300 (1896), the Supreme Court held that a verdict of acquittal is a bar to a subsequent prosecution for the same offense. The Court stated that the constitutional prohibition "is not against being twice punished, but against being twice put in jeopardy". 163 U.S. at 669, 16 S.Ct. at 1194. Cf. *United States v. Sisson*, 399 U.S. 267, 90 S.Ct. 2117, 26 L.Ed.2d 608 (1970); *Fong Foo v. United States*, 369 U.S. 141, 82 S.Ct. 671, 7 L.Ed. 2d 629 (1962). See also Note, Government Appeals of "Dismissals" in Criminal Cases, 87 Harv.L.Rev. 1822 (1974).[18]

■■ The problem arose in a different context in *Price v. Georgia*, 398 U.S. 323, 90 S.Ct. 1757, 26 L.Ed.2d 300 (1970), where the state attempted to retry an accused for murder after an earlier guilty verdict on the lesser included offense of voluntary manslaughter had been set aside because of trial error. While the government is

18. In *Ex Parte Lange*, 85 U.S. (18 Wall.) 163, 21 L.Ed. 872 (1873), the Court held that the double jeopardy clause also forbids multiple punishment for a single offense. The Court noted that

"[t]he common law not only prohibited a second punishment for the same offence, but it went further and forbid a second trial for the same offence, whether the accused had suffered punishment or not and whether in the former trial he had been acquitted or convicted."

Id. at 169. In reaching its result, the Court asked rhetorically: "For of what avail is the constitutional protection against more than one trial if there can be any number of sentences pronounced on the same verdict?" Id. at 173.

The limitation on multiple punishment for the same offense should be distinguished from multiple punishment for several offenses committed during a single criminal episode.

"The Double Jeopardy Clause does not limit the power of Congress and the States to split a single transaction into separate crimes so as to give the prosecution a choice of charges. . . . Moreover, the clause does not as a general matter, prohibit the imposition at one trial of cumulative penalties for different crimes committed during one transaction. . . . However, the clause does provide an outer limit on the power of federal and state courts to impose cumulative punishments for a single criminal transaction."

*Ashe v. Swenson*, 397 U.S. 436, 460 n. 14, 90 S.Ct. 1189, 1202 n. 14, 25 L.Ed.2d 469 (1970) (Brennan, J., concurring).

not precluded from retrying a defendant whose conviction is set aside because of error,[19] the defendant in *Price* had not been convicted of murder in the first trial. The first jury necessarily acquitted him on the greater charge when it returned a verdict of guilty on the lesser offense. The Court held that his retrial for murder violated the fourteenth amendment. The Court reached this conclusion notwithstanding the fact that in the second trial, the defendant was again convicted only of voluntary manslaughter. *Price* demonstrates that the double jeopardy clause is offended not by conviction but by trial and risk of conviction.[20]

A particularly thorny problem in double jeopardy law is deciding when a second prosecution involves the "same offense" as a prior prosecution.[21] In *Ashe v. Swenson*, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970), the defendant had been acquitted of robbing one of six men who were engaged in a poker game. Six weeks later he was brought to trial for the robbery of another participant in the poker game. The Court held that the double jeopardy clause mandated application of the rule of col-

**19.** E. g., *United States v. Tateo,* 377 U.S. 463, 84 S.Ct. 1587, 12 L. Ed.2d 448 (1964).

**20.** Compare *Green v. United States,* 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957). In *Green,* the defendant was convicted of a lesser offense in his first trial. Unlike *Price,* however, the retrial resulted in a conviction on the greater charge.

**21.** Modern criminal law has seen a proliferation of "overlapping and related" statutory offenses making it possible for a prosecutor to "spin out a startlingly numerous series of offenses from a single alleged criminal transaction." *Ashe v. Swenson,* supra at 446 n. 10, 90 S.Ct. at 1195 n. 10. Thus, a prosecutor dissatisfied with the result of a first trial could institute a new set of charges for a second prosecution. See generally *Commonwealth v. Campana,* 452 Pa. 233, 242–43 and nn. 8–12, 304 A.2d 432, 435–36 and nn. 8–12 (plurality opinion), vacated, 414 U.S. 808, 94 S.Ct. 73, 38 L.Ed.2d 44 (1973), reinstated on remand, 455 Pa. 622, 314 A.2d 854, cert. denied, 417 U.S. 969, 94 S.Ct. 3172, 41 L.Ed.2d 1139 (1974); Note, Twice in Jeopardy, 75 Yale L.J. 262, 267–99 (1965).

lateral estoppel.[22] The Court applied collateral estoppel in *Ashe* to hold that the second prosecution violated the fourteenth amendment. Three Justices would have gone further and held the double jeopardy clause requires that a prosecutor, except in limited circumstances, join at one trial all the charges against a defendant that grow out of a single criminal act, occurrence, episode or transaction. 397 U.S. at 453–54, 90 S.Ct. at 1199 (Brennan, J., concurring, joined by Douglas, J. and Marshall, J.).

Mr. Justice Brennan, in his concurrence in *Ashe*, asserted that neither collateral estoppel nor the traditional tests for determining whether a subsequent trial is for the same offense provides sufficient protection against the modern prosecutor's ability to subject an individual to multiple prosecutions. Id. at 450–53, 90 S.Ct. at 1197–99. In an earlier opinion, Mr. Justice Brennan articulated the reason for his concern.

> "The basis of the Fifth Amendment protection against double jeopardy is that a person shall not be harassed by successive trials; that an accused shall not have to marshal the resources and energies necessary for his defense more than once for the same alleged criminal acts."

*Abbate v. United States*, 359 U.S. 187, 198–99, 79 S.Ct. 666, 673, 3 L.Ed.2d 729 (1959) (separate opinion of Brennan, J.).

In *Commonwealth v. Campana*, 452 Pa. 233, 304 A.2d 432, vacated, 414 U.S. 808, 94 S.Ct. 73, 38 L.Ed.2d 44

---

22. The Court outlined the rule as follows:
 "Where a previous judgment of acquittal was based upon a general verdict, as is usually the case, [collateral estoppel] requires a court to 'examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration.'"
 397 U.S. at 444, 90 S.Ct. at 1194 (footnote omitted), quoting Mayers & Yarbrough, *Bis Vexari: New Trials and Successive Prosecutions*, 74 Harv.L.Rev. 1, 38–39 (1960).

(1973), reinstated on remand, 455 Pa. 622, 314 A.2d 854, cert. denied 417 U.S. 969, 94 S.Ct. 3172, 41 L.Ed.2d 1139 (1974), this Court recognized that the principal purpose of the double jeopardy clause is to prevent repeated attempts to convict an individual through a series of prosecutions and adopted the position urged by Mr. Justice Brennan in *Ashe.* We held as a matter of state law, that a prosecutor must bring all known charges against a defendant arising from a single criminal episode in a single proceeding.

Finally, the Supreme Court has held that a juvenile court proceeding may place an individual in jeopardy, barring a subsequent criminal trial for the same offense. *Breed v. Jones,* 421 U.S. 519, 95 S.Ct. 1779, 44 L.Ed.2d 346 (1975). In *Breed,* a seventeen year old was found to have violated a criminal statute after an adjudicatory hearing in juvenile court. The juvenile court subsequently ruled that the youth was unfit for treatment as a juvenile and ordered that he be prosecuted as an adult. The Supreme Court held that the second prosecution was barred by the double jeopardy clause. Mr. Chief Justice Burger, writing for a unanimous Court, reasoned that

"[b]ecause of its purpose and potential consequences, and the nature and resources of the State, [a juvenile] proceeding imposes heavy pressures and burdens—psychological, physical, and financial—on a person charged. The purpose of the Double Jeopardy Clause is to require that he be subject to the experience only once 'for the same offence.' "

421 U.S. at 529–530, 95 S.Ct. at 1786, citing *United States v. Jorn,* 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971) (plurality opinion); *Price v. Georgia,* supra, and *Green v. United States,* supra.

These cases demonstrate that the double jeopardy clause prohibits a second trial for the same offense after final judgment is reached in a first prosecution.

The Constitution bars the retrial itself, not merely conviction or punishment.

## 2. *Mistrial*

The double jeopardy clause may also preclude a retrial if the original prosecution results in mistrial. The threshold question is whether the original proceeding reached the stage at which jeopardy attached. Jeopardy attaches when the accused is put to trial before the trier of facts regardless whether the trier be a jury or a judge. *Serfass v. United States,* 420 U.S. 377, 95 S.Ct. 1055, 43 L.Ed.2d 265 (1975). Once jeopardy attaches, an individual has a "valued right to have his trial completed by a particular tribunal." *Wade v. Hunter,* 336 U.S. 684, 689, 69 S.Ct. 834, 837, 93 L.Ed. 974 (1949). As Justice Harlan observed in *United States v. Jorn,* 400 U.S. 470, 479, 91 S.Ct. 547, 554, 27 L.Ed.2d 543 (1971) (plurality opinion) :

> "[S]ociety's awareness of the heavy personal strain which a criminal trial represents for the individual defendant is manifested in the willingness to limit the Government to a single criminal proceeding to vindicate its very vital interest in enforcement of criminal laws."

In some circumstances, a defendant may be retried following a mistrial.[23] However, because of the

---

**23.** The fifth amendment does not guarantee a defendant that the government will be prepared, in all circumstances, to vindicate the social interest in law enforcement in a single proceeding. A trial court may order a mistrial where "there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated." *United States v. Perez,* 22 U.S. (9 Wheat.) 579, 580, 6 L.Ed. 165 (1824). In such cases, the defendant must stand trial again, even if the mistrial was ordered without his consent or over his objection. *Illinois v. Somerville,* 410 U.S. 458, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1973); *Wade v. Hunter,* 336 U.S. 684, 69 S. Ct. 834, 93 L.Ed. 974 (1949); *Commonwealth v. Robson,* 461 Pa. 615, 337 A.2d 573 (1975). There are no rigid rules for determining whether manifest necessity exists in a particular case. "[A] mechanical rule prohibiting retrial whenever circumstances compel the discharge of a jury without the defendant's

double jeopardy clause's policy of prohibiting multiple trials, retrial is "only grudgingly allowed," *United States v. Wilson,* 420 U.S. at 343, 95 S.Ct. at 1022, and is limited to cases in which the defendant consented or the declaration of a mistrial was manifestly necessary. Moreover, absent manifest necessity, the policy against multiple trials is paramount and a defendant is not required to undergo another trial. See note 30, infra.

Prosecution after mistrial raises no risk of multiple punishment. Thus, this situation most clearly shows that the double jeopardy clause is a prohibition against multiple prosecution.

### 3. *Successive prosecutions by different sovereigns.*

 The double jeopardy principle is implicated when an individual is tried in one jurisdiction following final judgment in another. In *Abbate v. United States,* 359 U.S. 187, 79 S.Ct. 666, 3 L.Ed.2d 729 (1959) and *Bartkus v. Illinois,* 359 U.S. 121, 79 S.Ct. 676, 3 L.Ed.2d 684 (1959), the Supreme Court held that neither a state prosecution after final judgment in federal court nor a federal prosecution after final judgment in state court is unconstitutional.[24] The decisions cited the principle of

consent would be too high a price to pay for the added assurance of personal security and freedom from governmental harassment which such a mechanical rule would provide."
*United States v. Jorn,* 400 U.S. 470, 480, 91 S.Ct. 547, 554, 27 L. Ed.2d 543 (1971) (plurality opinion). Accord, *Wade v. Hunter,* 336 U.S. at 688–89, 69 S.Ct. at 837.
 In the absence of prosecutorial or judicial overreaching, a retrial is not barred when a mistrial is granted at the defendant's request. *United States v. Dinitz,* 424 U.S. 600, 96 S.Ct. 1075, 47 L. Ed.2d 267 (1976); *United States v. Jorn,* supra (plurality opinion). See Part III, infra.

24. In *Bartkus,* where the state prosecution was preceded by a federal prosecution, the precise issue was whether the state prosecution was barred by the due process clause of the fourteenth amendment. See generally *Palko v. Connecticut,* 302 U.S. 319, 58 S.Ct. 149, 82 L.Ed. 288 (1937). *Bartkus* preceded *Benton v. Maryland,* supra, which overruled *Palko* and held the fifth amendment's double jeopardy clause binding on the states. *Abbate,* on the other hand, "squarely raise[d] the question whether a federal

"dual sovereignty" enunciated in *United States v. Lanza,* 260 U.S. 377, 43 S.Ct. 141, 67 L.Ed. 314 (1922).[25] Justice Black dissented vigorously in both cases. In *Bartkus,* he examined the history and rationale of the double jeopardy clause, the effect of successive prosecutions on the accused and the availability of preemption to mitigate administrative problems created by disallowing successive prosecutions. He stated that

"the basic and recurring theme . . . [in double jeopardy is] that it is wrong for a man to 'be brought into Danger for the same Offence more than once.' Few principles have been more deeply 'rooted in the traditions and conscience of our people.'

"The Court apparently takes the position that a second trial for the same act is somehow less offensive if one of the trials is conducted by the Federal Government and the other by a State. Looked at from the standpoint of the individual who is being prosecuted, this notion is too subtle for me to grasp."

359 U.S. at 155, 79 S.Ct. at 697 (Black, J., dissenting) (footnote omitted).

In *Commonwealth v. Mills,* 447 Pa. 163, 286 A.2d 638 (1971), this Court held that a second prosecution for the

prosecution of defendants already prosecuted for the same acts by the State" violates the fifth amendment. 359 U.S. at 189, 79 S.Ct. at 668.

**25.** "We have here two sovereignities, deriving power from different sources, capable of dealing with the same subject-matter within the same territory. . . . Each government in determining what shall be an offense against its peace and dignity is exercising its own sovereignty, not that of the other. It follows that an act denounced as a crime by both national and state sovereignties is an offense against the peace and dignity of both and may be punished by each."
260 U.S. at 382, 43 S.Ct. at 142.

The dual sovereignty theory is not applicable to the relationship between a municipality and the state. Successive prosecutions for the same offense by a state and a municipality violates the double jeopardy clause. *Robinson v. Neil,* 409 U.S. 505, 93 S.Ct. 876, 35 L.Ed.2d 29 (1973); *Waller v. Florida,* 397 U.S. 387, 90 S.Ct. 1184, 25 L.Ed.2d 435 (1970).

same offense will not be permitted in Pennsylvania if another jurisdiction has prosecuted the individual, unless the Commonwealth's interests were not sufficiently protected in the initial prosecution. We found that the majority in *Bartkus* "first failed to recognize that the interests of the two sovereigns might be the same, but more important . . . failed to really examine the interest of the individual." 447 Pa. at 169, 286 A.2d at 641. Mr. Justice Eagen, speaking for the majority, declared that the double jeopardy clause was an expression

> "of self-evident moral precepts; It is wrong to retry a man for a crime of which he previously has been found innocent, wrong to harass him with vexatious prosecution, and wrong to punish him twice for the same offense."

Id.

This Court's decision in *Mills* evidenced acceptance of the view that the double jeopardy clause is designed to limit the number of times an individual may be tried for the same offense, not merely the number of times an individual can be convicted or punished.

4. *Government appeal in criminal cases.*

In 1892, the Supreme Court held that the federal government could not appeal an adverse decision in a criminal case without express statutory authorization. *United States v. Sanges*, 144 U.S. 310, 12 S.Ct. 609, 36 L.Ed. 445 (1892). Fifteen years later, Congress enacted the Criminal Appeals Act, which conferred jurisdiction on the Supreme Court to consider criminal appeals by the government in limited circumstances.[26] In 1970, Congress enacted a new Criminal Appeals Act,[27] which was intended

26. Act of March 2, 1907, ch. 2564, 34 Stat. 1246. For a history of the statutory authorization for criminal appeals by the federal government, see *United States v. Wilson*, 420 U.S. at 336–39, 95 S.Ct. at 1018–19.

27. 18 U.S.C.A. § 3731 (Supp.1976):
"In a criminal case an appeal by the United States shall lie to a court of appeals from a decision, judgment, or order of a

to broaden the government's authorization to appeal to the constitutional limit imposed by the double jeopardy clause. *United States v. Wilson,* 420 U.S. at 337, 95 S. Ct. at 1019. See generally Comment, Double Jeopardy Limitations on Appeals by the Government in Criminal Cases, 80 Dick.L.Rev. 525 (1976).

The new Criminal Appeals Act led the Supreme Court "to take a closer look at the policies underlying the Clause in order to determine more precisely the boundaries of the Government's appeal rights" in criminal cases. *United States v. Wilson,* 420 U.S. at 339, 95 S.Ct. at 1020. In *Wilson,* the Court concluded that

"[t]he development of the Double Jeopardy Clause from its common-law origins . . . suggests that it was directed at the threat of multiple prosecutions, not at Government appeals, at least where those appeals would not require a new trial."

420 U.S. at 342, 95 S.Ct. at 1021. Finding no threat of multiple prosecution or multiple punishment in *Wilson,* the Court held that the government could appeal from a post-verdict ruling of law by a trial judge in favor of a defendant without violating the double jeopardy clause.[28]

In *United States v. Jenkins,* 420 U.S. 358, 365, 95 S.Ct. 1006, 1011, 43 L.Ed.2d 250 (1975), the Court explained its holding in *Wilson* as follows:

"When a case has been tried to a jury, the Double Jeopardy Clause does not prohibit an appeal by the Government providing that a retrial would not be re-

district court dismissing an indictment or information as to any one or more counts, except that no appeal shall lie where the double jeopardy clause of the United States Constitution prohibits further prosecution."

**28.** In *Wilson,* the trial judge ruled, after the jury returned a guilty verdict, that preindictment delay had prejudiced the defendant's right to a fair trial and ordered dismissal of the indictment. The Supreme Court reversed and remanded the case to the Court of Appeals to consider the merits of the government's appeal of the trial judge's post-verdict ruling.

quired in the event the Government is successful in its appeal."

The Court stated that the same principle would apply to a bench trial. In *Jenkins*, the trial court "dismissed" the indictment and "discharged" the defendant after a bench trial, apparently on an issue of law rather than from a factual finding that the government had failed to prove its case. However, the Supreme Court could not discern a clear resolution of the factual issues against the defendant. Since resolution of the government's appeal in its favor would require "further proceedings of some sort, devoted to the resolution of factual issues going to the elements of the offense charged," 421 U.S. at 370, 95 S.Ct. at 1013, the Court held that permitting the government to appeal would violate the double jeopardy clause.

 · Like the cases involving other contexts, the recent cases on government appeals clearly reflect the principle that the fundamental policy behind the double jeopardy clause is that the defendant should be spared a second trial once jeopardy attaches a first time. The decisions prohibit retrial even if the defendant's discharge resulted from what may have been reversible legal error.

## C

The double jeopardy prohibition is often described as a universal principle of reason, justice and conscience. E. g., *Bartkus v. Illinois*, 359 U.S. at 154, 79 S.Ct. at 697 (Black, J., dissenting) ; see *Sigler*, supra at v. In *Benton v. Maryland*, 395 U.S. 784, 794, 89 S.Ct. 2056, 2062, 23 L.Ed.2d 707 (1969), the Supreme Court described it as a "fundamental ideal in our constitutional heritage." Double jeopardy policy is implicated in a variety of procedural contexts. In each of these contexts, the policy against multiple trials has been recognized as central to the double jeopardy clause. The critical consideration is

that a defendant should be forced to "run the gauntlet" [29] of a criminal prosecution only once for a single offense.

This fundamental policy against multiple prosecution has both substantive and procedural aspects. For example, the policy against multiple prosecution has been harmonized with society's interest in effective law enforcement to permit a second prosecution following a mistrial in some cases. Thus, a body of law has developed demarcating the substantive scope of the protection afforded by this constitutional right. Similarly, courts have recognized that the proliferation in the number of criminal statutes permits a prosecutor to carve up a single transaction into a number of offenses and prosecute each successively. The response has been to employ the double jeopardy clause in order to minimize the potential for multiple prosecution. Compare *Ashe v. Swenson,* supra with *Commonwealth v. Campana,* supra.

In delineating the scope of protection afforded by the double jeopardy prohibition, courts have recognized the practical impact of a criminal prosecution on an individual. A criminal prosecution imposes severe psychological, physical and economic burdens on the accused. It is morally wrong for the government to impose these hardships on an individual more than once for a single offense. The double jeopardy prohibition stems from this moral judgment which is deeply held by our society.

The basic purpose of the double jeopardy clause mandates that a defendant who has a meritorious claim have an effective procedural means of vindicating his constitutional right to be spared an unnecessary trial. Acquittal upon retrial or belated appellate recognition of a defendant's claim by reversal of a conviction can never adequately protect the defendant's rights. The defendant is deprived of his constitutional right the moment jeopardy attaches a second time. His loss is irrep-

29. *Green v. United States,* 355 U.S. at 190, 78 S.Ct. at 225.

arable;[30] to subject an individual to the expense, trauma and rigors incident to a criminal prosecution a second time offends the double jeopardy clause. The clause establishes the "right to be free from a second prosecution, not merely a second punishment for the same offense." *Fain v. Duff*, 488 F.2d 218, 224 (5th Cir. 1973).

Without immediate appellate review, a defendant will be forced to undergo a new trial, precluding any review of his claim that he should not be tried at all. "Because of the nature of the constitutional right . . . assert[ed], no post-conviction relief, either state or federal, is capable of vindicating [appellant's] interest." *United States ex rel. Webb v. Court of Common Pleas*, 516 F.2d 1034, 1037 (3d Cir. 1975). As Judge Adams observed in *Webb*, "forcing [appellant] to trial would defeat the constitutional right he seeks to preserve." Id. at 1039. Exceptional circumstances exist

**30.** For this reason, the Third Circuit holds that a state criminal defendant may seek federal habeas corpus relief prior to commencement of a retrial which he claims is barred by the double jeopardy clause. *United States ex rel. Stewart v. Hewitt*, 517 F. 2d 993 (3d Cir. 1975); *United States ex rel. Webb v. Court of Common Pleas*, 516 F.2d 1034 (3d Cir. 1975); *United States ex rel. Russo v. Superior Court*, 483 F.2d 7 (3d Cir.), cert. denied, 414 U.S. 1023, 94 S.Ct. 447, 38 L.Ed.2d 315 (1973). Accord, *Thomas v. Beasley*, 491 F.2d 507 (6th Cir. 1974); *Fain v. Duff*, 488 F.2d 218 (5th Cir. 1973).

Our decision today provides our state court system a full opportunity to pass upon these claims before the federal courts intervene. This result is consonant with our purpose of insuring

"that the occasions would be few when the federal courts, in considering petitions for habeas corpus . . . would find it necessary to reach and decide issues which our State courts had refused to decide on the merits."

*Commonwealth v. Schmidt*, 452 Pa. 185, 195, 299 A.2d 254, 260 (1973) (Opinion of Pomeroy, J., joined by Eagen, J., with three Justices concurring). In the interest of federal-state comity, we should not unnecessarily increase the case load of the federal courts. Permitting defendants to appeal asserted double jeopardy claims will have the salutary effect of delaying federal court intervention and increases the likelihood that errors will be rectified by the state system.

under Pennsylvania law warranting appellate review prior to judgment of sentence.[31]

Therefore, we hold that denial of a pre-trial application to dismiss an indictment on the ground that the scheduled trial will violate the defendant's right not to be placed twice in jeopardy may be appealed before the new trial is held.

## III

Appellant's first trial ended when the trial court granted appellant's motion for a mistrial. He asserts that his motion for mistrial was compelled by prosecutorial and judicial misconduct and that his retrial would violate the double jeopardy clause. We do not agree. We conclude that the double jeopardy clause does not bar a new trial in this case.

## A

Appellant is charged with the murder of Robert (Tim) Indyk during the course of a robbery on January 10, 1972. His first trial began on January 21, 1976. The

31. *Commonwealth v. Myers,* 457 Pa. 317, 322 A.2d 131 (1974), which held that an order denying a defendant's speedy trial claim is interlocutory and not appealable, is not inconsistent with today's result. The speedy trial guarantee of the sixth amendment is designed "(i) to prevent oppressive pre-trial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." *Barker v. Wingo,* 407 U.S. 514, 532, 92 S.Ct. 2182, 2193, 33 L.Ed.2d 101 (1972) (footnote omitted). In a pre-trial motion to dismiss on the basis of the right to speedy trial, a defendant necessarily asserts that the right has already been violated. The remedy, dismissal of the indictment, can be accomplished on appeal after judgment. Thus, this Court has held that despite the further delay and burdens incident to trial, a defendant's rights are sufficiently protected by appeal after judgment. A defendant raising a double jeopardy claim, on the other hand, is asserting that his rights *will be* violated if a prosecution is permitted to proceed. An immediate appeal, if successful, can fully vindicate the right not to be placed twice in jeopardy. Thus, although there may be some justification for allowing appeals from speedy trial claims, the reasons for permitting immediate appeal for double jeopardy claims are considerably more compelling.

principal Commonwealth witness, Michael F. Romano, testified that two days before the crime, he, appellant and a third individual, John Nastari, surveyed Indyk's place of business to plan a robbery. Romano did not participate on the day of the robbery, however, and first learned about the crime from a newspaper account on January 11, 1972.

Romano further testified that he and Nastari visited appellant in November 1973, at the Westmoreland County Jail, where appellant was incarcerated on charges unrelated to this case. The purpose of the visit was to bolster appellant's spirits as Nastari feared that appellant might admit complicity in the Indyk murder. In February 1974, Romano went to the authorities and disclosed his knowledge of the crime.

Later in the trial, the Commonwealth called Donald Darcy as a surprise witness. Darcy testified that in December 1975, one month before the trial, he met appellant while both were imprisoned at Western Penitentiary. He testified that appellant admitted to him that he had murdered Indyk during the course of the robbery and offered Darcy $15,000 to kill Commonwealth witness Michael Romano. Darcy, who was eligible for prison furloughs because he was about to be paroled, agreed to carry out the plan. Appellant gave Darcy the telephone number of his friend Donna Indyk and instructed him to contact her to make arrangements to kill Romano.

On January 6, 1976, Darcy informed the police of the solicitation to murder Romano and gave the police a written statement on January 9, 1976. He met with Ms. Indyk on January 13, and January 14, 1976 to discuss the murder scheme.

At the conclusion of Darcy's direct testimony, the Commonwealth gave appellant's counsel a copy of Darcy's written statement of January 9, 1976.

On cross-examination, Darcy testified that he also met with Ms. Indyk on January 17, 1976, and gave written

statements to the police on January 13, 14 and 17, 1976. At sidebar, appellant's counsel requested copies of these three statements. The Commonwealth objected on the basis that the statements were not related to Darcy's direct testimony.

The trial court held an unrecorded discussion in chambers with both counsel. Appellant's counsel, Thomas Livingston, asserts by affidavit [32] that during the discussion Judge Sweet pressured him to withdraw his discovery request, informing him that Darcy's written statements could personally damage Livingston. Livingston refused to withdraw his request.

After a recess, the trial court reluctantly ruled that appellant was entitled to Darcy's written statements to the police.[33] Livingston examined the statements and then advised the court that he had to withdraw as coun-

32. This affidavit was attached to appellant's pre-trial application to dismiss, filed before the second trial was to begin.

33. "THE COURT: There has been a request by the defense for four statements. I have urged Mr. Livingston not to persist in his request. I take it after discussing this with your client, that you do persist?
MR. LIVINGSTON: I do, Your Honor.
. . . .
THE COURT: Even though I think this is unwise as a policy matter, I feel coerced by the Jencks case and I'm going to give him the statements. However, I consider these four single items. You understand you go into this, you take the risk of going into all of it?
MR. LIVINGSTON: I understand, Your Honor."
The Jencks case adverted to by Judge Sweet is Jencks v. United States, 353 U.S. 657, 77 S.Ct. 1007, 1 L.Ed.2d 1103 (1957), in which the Supreme Court exercised its supervisory powers to require the government to disclose to the defense at trial, for purposes of cross-examination, prior statements of prosecution witnesses. Congress subsequently enacted the Jencks Act, 18 U.S.C.A. § 3500 (1969) (Supp.1976), which codifies Jencks with modifications. Similarly, in Pennsylvania, the defense is entitled to discovery at trial of prior relevant statements made by Commonwealth witnesses. Commonwealth v. Grayson, 466 Pa. 427, 353 A.2d 428 (1976); Commonwealth v. Kontos, 442 Pa. 343, 276 A.2d 830 (1971); see Commonwealth v. Johnson, 457 Pa. 554, 327 A.2d 632 (1974); Commonwealth v. Morris, 444 Pa. 364, 281 A.2d 851 (1971).

sel because he would have to testify on appellant's behalf. Darcy's statements indicated that Livingston was present at a meeting with Darcy and Ms. Indyk and had taken part in the conspiracy to murder Romano. Livingston denied this allegation and indicated that his testimony was necessary to appellant's defense for purposes of discrediting Darcy's testimony. He stated that he was therefore unable to provide effective assistance to his client. See Pennsylvania Supreme Court Code of Professional Responsibility DR 5–102(A) (1974).

On the following morning, Livingston told the court that he had introduced appellant to independent counsel, John L. Doherty. Doherty would not enter an appearance for appellant, but told the court that he had advised appellant to subpoena Livingston for his defense. Doherty also stated that he needed more time to prepare for the trial and could not effectively assist appellant. At this stage, appellant moved for and was granted a mistrial.[34]

On February 17, 1976, the day the new trial was scheduled to commence, appellant filed an application to dismiss the indictment. The trial court denied the motion.[35] Appellant filed an appeal from the denial of his application to dismiss and a petition for superse-

---

34. The written motion was signed by appellant, Livingston and Doherty.

35. The court denied the application "as untimely, as supported by inaccuracies and as inappropriate under the circumstances." The Commonwealth asserts that the trial court properly held the application, filed on the day of trial, untimely because it did not satisfy the requirements of Pa.R.Crim.P. 305. Rule 305 provides in pertinent part:

"Except as provided in these Rules, no pre-trial application shall be considered if made less than ten days before trial unless opportunity therefor did not exist or the defendant or his attorney was not aware of the grounds for the application."

The record indicates that the transcript of the first trial was not available until February 13, 1976, four days before appellant filed the application. In these circumstances, we conclude that appellant has satisfied the requirements of Rule 305.

deas in this Court. In its answer to the petition for supersedeas, the Commonwealth represented that prior to the first trial, the prosecutor met with the trial judge, Judge Sweet, in chambers to inform him that an investigation had revealed the existence of a conspiracy to murder Commonwealth witness Romano and that a reliable informant had implicated defense counsel Livingston in the conspiracy. The Commonwealth further alleged that the prosecutor told Judge Sweet before trial that the Commonwealth would not introduce evidence of Livingston's involvement in the conspiracy.

On February 17, 1976, a Justice of this Court granted supersedeas. On February 23, 1976, Judge Sweet placed a statement in the record denying that he had any knowledge of Darcy's statements to the police before trial.[36]

## B

Appellant asserts that the double jeopardy clause bars his retrial because his motion for mistrial was necessitated by serious prosecutorial and judicial misconduct. We do not agree.

If a mistrial is ordered without a defendant's consent, the double jeopardy clause permits retrial only if the trial court's decision was dictated by manifest necessity. See note 23, supra and accompanying text. Cir-

---

**36.** The trial judge also stated:
 ". . . I want the record to show that Mr. Livingston was insisting on testifying when there was nothing before the jury to be a subject for his testimony. Mr. Livingston could only become a witness if he pushed Darcy a good way beyond the scope of direct examination and then took the stand to deny what he developed that way. The real reason that I let Livingston withdraw from the case was that he had an obvious conflict of interest with his client . . . since it would be to Livingston's obvious interest to disassociate himself from all efforts to terminate the life of Romano . . . .
 ". . . As I see it, Livingston sprang into the breach here to abort a trial that was going badly, insisted on testifying and made the motion for the withdrawal of a juror to get a fresh start."

cumstances in which a second trial may be held although the first jury was discharged without reaching a verdict and without defendant's consent have included jury deadlock, jury bias and illness of the judge or jury.[37] The Supreme Court has emphasized that the determination whether the trial court's decision to abort a trial prior to verdict was "dictated" by manifest necessity does not lend itself to rigid rules and each case must "turn on the particular facts." *Illinois v. Somerville*, 410 U.S. 458, 464, 93 S.Ct. 1066, 1070, 35 L.Ed.2d 425 (1973).

When a mistrial is granted on defendant's motion, however, the double jeopardy clause ordinarily does not bar retrial. As Justice Harlan stated in *United States v. Jorn*, 400 U.S. at 485, 91 S.Ct. at 557 (plurality opinion):

> "[W]here circumstances develop not attributable to prosecutorial or judicial overreaching, a motion by the defendant for mistrial is ordinarily assumed to remove any barrier to reprosecution, even if the defendant's motion is necessitated by prosecutorial or judicial error."

Accord, *United States v. Dinitz*, 424 U.S. 60, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976); *Durham v. Wyrick*, 545 F. 2d 41 (8th Cir. 1976); *United States v. Buzzard*, 540 F. 2d 1383 (10th Cir. 1976); *United States v. Wilson*, 534 F.2d 76 (6th Cir. 1976); *United States v. Estremera*, 531 F.2d 1103 (2d Cir. 1976); *United States v. Kessler*, 530 F.2d 1246 (5th Cir. 1976); *United States v. DiSilvio*,

---

37. For a discussion of manifest necessity, see Schulhofer, Jeopardy and Mistrials, 125 U.Pa.L.Rev. 449 (1977); *United States v. Jorn*, 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971) (plurality opinion); *Downum v. United States*, 372 U.S. 734, 83 S.Ct. 1033, 10 L.Ed.2d 100 (1963); *Commonwealth v. Robson*, 461 Pa. 615, 337 A.2d 573 (1975); *Commonwealth v. Shaffer*, 447 Pa. 91, 288 A.2d 727 (1972); *Commonwealth ex rel. Montgomery v. Myers*, 422 Pa. 180, 220 A.2d 859 (1966); *United States v. Wilson*, 534 F. 2d 76 (6th Cir. 1976).

520 F.2d 247 (3d Cir. 1975); *United States v. Jamison,* 164 U.S.App.D.C. 300, 505 F.2d 407 (1974); *United States v. Romano,* 482 F.2d 1183 (5th Cir. 1973), cert. denied, 414 U.S. 1129, 94 S.Ct. 866, 38 L.Ed.2d 753 (1974); *United States v. Beasley,* 479 F.2d 1124 (5th Cir.), cert. denied, 414 U.S. 924, 94 S.Ct. 252, 38 L.Ed.2d 158 (1973); *Roberts v. United States,* 477 F.2d 544 (8th Cir. 1973); *United States v. Pappas,* 445 F.2d 1194 (3d Cir. 1971); *United States v. Franke,* 409 F.2d 958 (7th Cir. 1969); *Conner v. Deramus,* 374 F.Supp. 504 (M.D. Pa.1974). See generally *Commonwealth ex rel. Montgomery v. Myers,* 422 Pa. 180, 220 A.2d 859 (1966).

The Supreme Court recently articulated the rationale for this rule in *United States v. Dinitz,* 424 U.S. 600, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976). After prosecutorial or judicial error prejudices a defendant, he may prefer to avoid the possibility of conviction followed by reversal on appeal and retrial. In these circumstances, a mistrial request serves the double jeopardy policy of avoiding the anxiety, expense and burdens occasioned by multiple prosecution. On the other hand, a defendant may prefer to go to the first jury. "The important consideration, for purposes of the Double Jeopardy Clause, is that the defendant retains primary control over the course to be followed in the event of such error." *Id.* at 609, 96 S.Ct. at 1081 (footnote omitted). This is the central distinction between mistrials granted on defendant's request and mistrials ordered sua sponte by the trial court. In the first situation, the defendant may opt to go to the first jury and perhaps obtain an acquittal. In contrast, a judge's mistrial order without defendant's consent, deprives him of his valued right to have his trial completed by a particular tribunal. Cf. *United States v. Jorn,* 400 U.S. at 484, 91 S.Ct. at 556–57 (plurality opinion) (drawing same distinction between retrial after appellate reversal of conviction and retrial after mistrial ordered without defendant's consent).

When a defendant's mistrial request is occasioned by prosecutorial or judicial overreaching, however, the policy against multiple prosecution mandates that reprosecution be prohibited. Such misconduct, which may be undertaken to provoke a mistrial request and afford the prosecution a second, perhaps more favorable opportunity to secure a conviction, clearly requires a bar to retrial; the double jeopardy clause is designed to protect an individual from such tactics.

It is unclear from the Supreme Court cases whether "overreaching" is limited to intentional misconduct or whether it extends to gross negligence on the part of the prosecutor or judge. It is extremely difficult to establish that prosecutorial or judicial error was intentional. See *Illinois v. Somerville,* 410 U.S. at 482 n. 1, 93 S.Ct. at 1081–82 n. 1, and cases cited therein (Marshall, J., dissenting). A defendant's rights may not be adequately protected if he is required to prove that the errors were intentional.[38]

**38.** In numerous cases, courts have reviewed the trial proceedings and concluded that the improprieties which mandated a mistrial were committed unintentionally. *Commonwealth v. Wright,* 439 Pa. 198, 266 A.2d 651 (1970) (prosecutor offered to introduce defendant's prior criminal record in open court despite trial court's advance ruling against admissibility); *Commonwealth ex rel. Montgomery v. Myers, supra* (prosecutor's prejudicial closing remarks to the jury); *Commonwealth v. Buzzard,* 540 F.2d 1383 (10th Cir. 1976) (improper questioning of witness concerning matter unrelated to prosecution); *United States v. Romano,* 482 F.2d 1183 (5th Cir. 1973), cert. denied, 414 U.S. 1129, 94 S.Ct. 866, 38 L.Ed.2d 753 (1974) (prosecutor's improper opening remarks to the jury); *United States v. Beasley,* 479 F.2d 1124 (5th Cir.), cert. denied, 414 U.S. 924, 94 S.Ct. 252, 38 L.Ed.2d 158 (1973) (improper questioning of defense's chief alibi witness).

In *United States v. Wilson,* 534 F.2d 76, 81 n. 7 (6th Cir. 1976), the Sixth Circuit stated: "[T]he difficulty of showing a prosecutor's intentional manipulation of a mistrial . . . [is a] reason that a District Court should undertake the broadest possible inquiry into the serious charge of prosecutorial manipulation." The court held that the district court erred in restricting its inquiry into the nature of the prosecutor's misconduct to the trial record.

The United States Court of Appeals for the Fifth Circuit has taken the position that overreaching involving gross negligence as well as intentional misconduct bars retrial after a defendant's mistrial motion is granted. *United States v. Kessler, supra; United States v. Beasley, supra.* We conclude that the Fifth Circuit's view is warranted by the policies underlying the double jeopardy clause and adopt the position taken in *Kessler* and *Beasley.*

■ The double jeopardy clause is not designed solely to preclude bad faith harassment of an individual by government prosecutors. It also serves, as emphasized earlier in this opinion, "to protect the defendant from continued exposure to embarrassment, anxiety, expense, and restrictions on his liberty." *Illinois v. Somerville,* 410 U.S. at 472, 93 S.Ct. at 1074 (White, J., dissenting, joined by Douglas, J. and Brennan, J.). Prosecutors and judges are public officials entrusted with substantial and sensitive responsibilities. They are required to act in the public interest, which includes protecting the rights of the accused. Society rightfully expects that they maintain professional competence in the exercise of their functions. See generally Pennsylvania Supreme Court Code of Judicial Conduct, Canon 3 and A(1). Compare ABA Project on Standards for Criminal Justice, Standards Relating to the Prosecution and Defense Function, the Prosecution Function, § 1.1(a)–(d) with Pennsylvania Supreme Court Code of Professional Responsibility EC 6–1, 6–5 (1974). A defendant forced to request a mistrial by conduct which conspicuously fails to satisfy professional standards should not be required to bear the heavy burdens incident to reprosecution.

■ Therefore, we hold that if a mistrial is ordered on defendant's motion due to intentional or grossly negligent misconduct on the part of the prosecutor or judge, reprosecution is barred by the double jeopardy clause.

In such circumstances, we find that the interests protected by the double jeopardy clause outweigh the public's interest in conducting a second trial.[39]

We conclude, however, after a review of the record, that appellant's trial was not aborted due to prosecutorial or judicial overreaching.

 Prior to trial, the prosecutor received information from Donald Darcy which implicated appellant's counsel in a conspiracy to murder the chief prosecution witness. The prosecutor must have realized, at that point, that placing Darcy on the stand would create a

---

**39.** *United States v. Dinitz, supra,* does not compel a different result. While language in the opinion may be interpreted to set forth the requirement that the misconduct be intentional, the Court did not explicitly rule out a gross negligence standard. In *Dinitz,* the Court of Appeals determined that the trial judge's exclusion of Dinitz's trial counsel left Dinitz no choice but to move for a mistrial. The Court of Appeals concluded that Dinitz's request for a mistrial should be ignored and that the case should be treated as if the trial judge had declared a mistrial over Dinitz's objection. The Supreme Court rejected that analysis because the important consideration in determining the standard to be applied is whether "the defendant retains primary control over the course to be followed" in the event of error. 424 U.S. at 609, 96 S.Ct. at 1081. Accordingly, the Court ruled that the "manifest necessity" standard was inapplicable to Dinitz's mistrial. Dinitz apparently did not contend that the judicial action which led to his mistrial constituted misconduct. Therefore, the Court was not called upon to define the type of overreaching which will bar a retrial after a defendant's mistrial motion is granted. Our consideration of that issue in the context of the misconduct alleged here clarifies the double jeopardy policies implicated by such a claim and supports the result reached by the Fifth Circuit and this Court.

Mr. Justice Pomeroy, in his concurring opinion, suggests that this Court should not decide the question because appellant does not assert that the prosecutor or judge acted in a grossly negligent manner. At page two of his brief, appellant frames the issue in the case as follows: "Does the double jeopardy clause attach when a defendant is forced to ask for a mistrial because statements of a Commonwealth witness, which were in the possession of the Commonwealth prior to trial and were related to the Court, required defense counsel to become a witness?" Appellant clearly contends that the prosecutor and trial judge acted improperly and that reprosecution is barred by the double jeopardy clause. The standard of misconduct which will bar reprosecution is therefore at issue.

conflict of interest between appellant's counsel and appellant which could easily precipitate a mistrial.[40] The prosecutor decided to limit the scope of Darcy's testimony on direct examination in the hope that he then would have no duty to disclose to the defense Darcy's statements which linked appellant's counsel to the murder conspiracy. At trial, however, the court ordered the witness' statements be given to the defense.

Appellant asserts that the prosecutor should have advised the defense of the conflict of interest before jeopardy attached at the first trial. Certainly this would have been the better course of conduct. However, failure to do so in the unusual circumstances of this case did not constitute gross negligence.

■■■ While we find that the prosecutor exercised poor judgment, we are not persuaded that his conduct was so far below the standards expected of a prosecutor as to warrant a prohibition against reprosecution.[41]

**40.** The conflict would arise regardless whether Darcy's allegation were true. If counsel had participated in the alleged murder conspiracy, he could not effectively cross-examine Darcy for fear of exposing his complicity. Cf. Pennsylvania Supreme Court Code of Professional Responsibility DR 5–101(A) (1974):

> "Except with the consent of his client after full disclosure, a lawyer shall not accept employment if the exercise of his professional judgment on behalf of his client will be or reasonably may be affected by his own financial, business, property, or personal interests."

If counsel was not involved in the alleged conspiracy, he had an interest in preventing even mere disclosure of the allegations in order to avoid damage to his reputation. Alternatively, he might choose to testify and deny the charges at trial in order to discredit Darcy. See id. DR. 5–102(A):

> "If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm ought to be called as a witness on behalf of his client, he shall withdraw from the conduct of the trial . . . ."

In any case, counsel's withdrawal from representation of appellant should have been anticipated.

**41.** The prosecution should have known that all of Darcy's statements to the police would be discoverable once he testified on direct concerning the conspiracy. In his direct testimony, Darcy

First, we note that under Pa.R.Crim.P. 310, a defendant is not entitled, even upon request, to pre-trial discovery of the written statements of Commonwealth witnesses.[42] Thus, the prosecutor's action conformed with the applicable discovery rules promulgated by this Court. While mechanical reliance on a rule may prove to be unjustified in a particular case if competing constitutional requirements are paramount, we do not believe that the Commonwealth's reliance on Rule 310 was totally unreasonable in these circumstances. Moreover, the record indicates that prior to trial, the police investigation of the alleged murder conspiracy was an ongoing one and that Donald Darcy, their undercover agent, was extremely ap-

described the meetings in furtherance of the conspiracy which took place on January 13 and January 14, 1976 and stated that he gave a written statement to the police on January 9, 1976. He did not refer to appellant's counsel as a co-conspirator. On cross-examination, appellant's counsel elicited that other meetings took place and other written statements, were given to the police. When appellant asked for copies of the other written statements, the Commonwealth objected on the ground that the defense was only "entitled to statements relating to testimony that the witness gave on direct." We perceive no merit in the contention that testimony concerning later events in the conspiracy fell outside the scope of the direct examination. The substantial relationship between the written statements appellant gave the police and the subject matter of his direct testimony is self-evident. Indeed, it appears that Darcy's statements would be relevant to his testimony and therefore discoverable upon request even if he had not testified about the other meetings on cross-examination. Thus, the Commonwealth strategy, designed to avoid discovery of the post-January 9, 1976, written statements was doomed from the outset.

42. Rule 310 provides:
"All applications of a defendant for pretrial discovery and inspection shall be made not less than five days prior to the scheduled date of trial. The court may order the attorney for the Commonwealth to permit the defendant or his attorney, and such persons as are necessary to assist him, to inspect and copy or photograph any written confessions and written statements made by the defendant. No other discovery or inspection shall be ordered except upon proof by the defendant, after hearing, of exceptional circumstances and compelling reasons. . . . In no event . . . shall the court order pretrial discovery or inspection of written statements of witnesses in the possession of the Commonwealth."

prehensive about his personal safety. We can appreciate the Commonwealth's reluctance to alert possible members of the conspiracy to the discovery of their plans.[43] In short, we are satisfied that mistrial request on appellant's motion was not due to prosecutorial overreaching.[44]

Nor do we find merit in appellant's claim that judicial overreaching in the first trial prevents him from being retried. Appellant alleges various instances of judicial misconduct in the first proceeding. However, his assertion that the trial judge knew about Darcy's allegation before trial is the only one that relates to his double jeopardy claim.[45] As stated above, the prosecutor asserts but the judge denies that the prosecutor informed the judge of the alleged participation of appellant's counsel in the conspiracy to murder a Commonwealth wit-

**43.** We cannot glean from the record, however, the reason that the alleged co-conspirators were not arrested. If that course had been followed, the difficulties which arose at trial may have been avoided.

**44.** In his brief, appellant speculates that far more serious misconduct took place. He suggests that the Commonwealth may have put Darcy on the stand with the expectation that appellant's counsel would not ask for the additional statements given to the police or could be threatened into withdrawing his request. We find nothing in the record to support these allegations. Since appellant does not contend that he was improperly restricted from placing evidence relevant to this charge on the record, a remand is not necessary. Compare *United States v. Wilson,* 534 F.2d 76 (6th Cir. 1976).

**45.** We are disturbed by the allegation that Judge Sweet communicated with the prosecutor ex parte prior to trial. See Pennsylvania Supreme Court Code of Judicial Conduct, Canons 2 and 3A(4).

Appellant's counsel also alleges that Judge Sweet pressured him to withdraw his discovery request during a discussion in chambers by assuring him that Darcy's statements would then be sealed by the court. These allegations of serious impropriety are not strictly relevant to appellant's double jeopardy claim; only conduct which compelled the defense's mistrial request need be considered. The mistrial was not caused by attempts to deter discovery at trial. Rather, it occurred due to the decision to permit Darcy to testify without affording the defense pre-trial discovery of the written statements Darcy gave to the police. Thus, we find it unnecessary to inquire further into these allegations.

ness. We need not resolve this conflict in order to determine the merits of appellant's claim. Even if the trial judge was aware of Darcy's allegation, we cannot say that his failure to order pre-trial discovery sua sponte constituted grossly improper conduct in light of Pa.R. Crim.P. 310 and the unique and troublesome situation presented to him at that time.

The trial court's order denying appellant's application to dismiss is affirmed and the case is remanded for trial.

JONES, former C. J., did not participate in the decision of this case.

EAGEN, C. J., concurs in the result.

POMEROY, J., filed a concurring opinion.

NIX, J., filed a dissenting opinion in which O'BRIEN, J., joins.

POMEROY, Justice, concurring.

I agree with the Court's holding that denial of a pretrial motion to quash an indictment, where the motion alleges that a second trial will violate a defendant's right not to be placed twice in jeopardy, is a final, appealable order. I deem it desirable, however, to set forth in concise fashion my reasons for reaching this result. I also agree with the Court's conclusion that there was no judicial or prosecutorial overreaching in appellant's first trial, and that therefore the double jeopardy clause does not bar reprosecution of this appellant. In my view, however, it is unnecessary in this case to reach the question addressed by the Court in part III–B of the opinion, i. e., whether judicial or prosecutorial overreaching, sufficient to bar a second trial under the double jeopardy proscription, includes conduct which amounts to gross negligence.

## I.

In felonious homicide cases, the Appellate Court Jurisdiction Act of 1970 invests this Court with exclusive jurisdiction of appeals from final orders of the courts of common pleas.[1] As a general rule, criminal defendants may appeal only from a judgment of sentence entered upon a verdict. E. g., *Commonwealth v. Myers*, 457 Pa. 317, 322 A.2d 131 (1974); *Commonwealth v. Sites*, 430 Pa. 115, 242 A.2d 220 (1968); *Commonwealth v. Swanson*, 424 Pa. 192, 225 A.2d 231 (1967). This is a salutary rule based upon sound policy,[2] and exceptions to it should be created only in the rare situations where the need for immediate review outweighs the purposes served by requiring finality. *See* ABA Project on Minimum Standards for Criminal Justice, Standards Relating to Criminal Appeals, § 1.3(b), commentary (d) (Approved Draft, 1970). A denial of a pre-trial motion alleging prospective infringement of the right against double jeopardy should retrial be had, presents just such a situation.

As the Court's opinion points out, the constitutional ban against double jeopardy [3] is designed not merely to protect a defendant from multiple convictions or multiple punishment for the same offense; one of the central purposes of the clause is to prevent a defendant from having to undergo the hardships of a second trial for the same

1. Act of July 31, 1970, P.L. 673, No. 223, Art. II, § 202(1), 17 P.S. § 211.202(1) (Supp.1976–1977).

2. See *United States v. Ryan*, 402 U.S. 530, 91 S.Ct. 1580, 29 L.Ed. 2d 85 (1971); *DiBella v. United States*, 369 U.S. 121, 82 S.Ct. 654, 7 L.Ed.2d 614 (1962); *Cobbledick v. United States*, 309 U.S. 323, 60 S.Ct. 540, 84 L.Ed. 783 (1940); *In re Grand Jury Proceedings*, 525 F.2d 151 (3rd Cir. 1975).

3. U.S.Const. amend. V; Pa.Const. art. I, § 10. In *Benton v. Maryland*, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969), the Fifth Amendment double jeopardy clause was made applicable to the states through the Fourteenth Amendment.

offense.[4] The "prohibition is not against being twice punished, but against being twice put in jeopardy". *United States v. Ball,* 163 U.S. 662, 669, 16 S.Ct. 1192, 1194, 41 L.Ed. 300, 302 (1896). The accused is to be protected from the necessity of enduring the ordeal and anxiety inherent in having to undergo a second prosecution.[5] It follows that although the accused might be acquitted following retrial, or an appellate court might reverse on double jeopardy grounds a conviction obtained after a second trial, the defendant's right not to be placed twice in jeopardy will have been violated, and the right so guaranteed will have been irretrievably lost. To afford a defendant the full measure of protection the double jeopardy clause was designed to ensure, therefore, it seems obvious that there must be an effective procedural mechanism by which a defendant can have his claim heard before the alleged violation has been committed. Such a mechanism is simply to afford a defendant an immediate appeal from a denial of a pre-trial motion to quash the indictment.

4. See *United States v. Wilson,* 420 U.S. 332, 342–43, 95 S.Ct. 1013, 43 L.Ed.2d 232, 241 (1975); *United States v. Jorn,* 400 U.S. 470, 479, 91 S.Ct. 547, 27 L.Ed.2d 543, 553 (1971); *Ex Parte Lange,* 85 U.S. (18 Wall.) 163, 168–73, 21 L.Ed. 872, 876–78 (1874); *United States ex rel. Webb v. Court of Common Pleas,* 516 F.2d 1034, 1037, 1039–41 (3rd Cir. 1975); *Fain v. Duff,* 488 F.2d 218, 224 (5th Cir. 1973). *See also* cases cited in note 6, *infra.*

5. Mr. Justice Black perhaps best gave voice to the basic reason behind the prohibition in the well-known passage, which the Court quotes, opinion of the Court, *ante* at 97, 98 and which I repeat here:

"The underlying idea [behind the double jeopardy clause], one that is deeply ingrained in at least the Anglo-American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty." *Green v. United States,* 355 U.S. 184, 187–88, 78 S.Ct. 221, 223, 2 L.Ed.2d 199, 204 (1957).

In the civil context, this Court has stated that

"Whether an order is final and appealable cannot necessarily be ascertained from the face of a decree alone, nor simply from the technical effect of the adjudication. The finality of an order is a judicial conclusion which can be reached only after an examination of its ramifications. We follow the reasoning of the United States Supreme Court that a finding of finality must be the result of a practical rather than a technical construction. *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 546, 69 S.Ct. 1221, 1226, 93 L.Ed. 1528 (1949)." *Bell v. Beneficial Consumer Discount Co.*, 465 Pa. 225, 228, 348 A.2d 734, 735 (1975).

In *Cohen v. Beneficial Industrial Loan Corp.*, *supra,* the Supreme Court of the United States carved an exception to the final judgment rule for situations where postponement of appeal until after final judgment might result in an irreparable loss of the right asserted. Under *Cohen,* an order is considered final and appealable if (1) it is separable from, and collateral to, the main cause of action; (2) the right involved is too important to be denied review; and (3) the question presented is such that, if review is postponed until final judgment in the case, the claimed right will be irreparably lost. *Cohen, supra,* 337 U.S. at 546–47, 69 S.Ct. at 1225–1226, 93 L.Ed. at 1536; *see* 9 Moore's Federal Practice § 110.10 (2d Ed. 1970).

In the past we have found the reasoning in *Cohen* to be persuasive, *Bell, supra,* and I see no reason why the exception to the finality rule there created by the Supreme Court should not be equally persuasive to this Court in the criminal context. Indeed, of the six United States Circuits which have addressed the issue confronting us today, four, including the Court of Appeals for the Third Circuit, have applied the reasoning of *Cohen* in concluding that a denial of a defendant's pre-trial double jeopardy claim is a final, appealable order within the

meaning of 28 U.S.C. § 1291.[6] These courts were of the view that denial of a motion to dismiss an indictment on double jeopardy grounds is precisely the type of order which, though not final, should be appealable under *Cohen.*

"First, defendant's right is under the fifth amendment and it is separable from, and collateral to, the main cause of action, which is whether he is innocent or guilty of the crimes charged. Second, the right claimed is a constitutional one and, as such, is too important to be denied review. Finally, if review is not had now, the right claimed—to be free from being twice forced to stand trial for the same offense—will be irreparably lost." *United States v. Landsdown,* 460 F.2d 164, 171 (4th Cir. 1972).

I find this reasoning convincing, and thus agree with the conclusion of the opinion of the Court that a denial of a pre-trial motion to quash an indictment based on double jeopardy grounds is a final, appealable order.[7]

6. These Circuits are the Second, Third, Fourth and Eighth. See *United States v. Alessi,* 536 F.2d 978 (2d Cir. 1976); *United States v. MacDonald,* 531 F.2d 196 (4th Cir. 1976); *United States v. Barket,* 530 F.2d 181 (8th Cir. 1975); *United States v. DiSilvio,* 520 F.2d 247 (3d Cir.) *cert. denied,* 423 U.S. 1015, 96 S.Ct. 447, 46 L.Ed.2d 386 (1975); *United States v. Beckerman,* 516 F.2d 905 (2d Cir. 1975); *United States v. Landsdown,* 460 F.2d 164 (4th Cir. 1972). The two Circuits which have addressed the issue but have reached a contrary result are the Fifth and Ninth. See *United States v. Young,* 544 F.2d 415 (9th Cir. 1976); *United States v. Bailey,* 512 F.2d 833 (5th Cir. 1975); *Gilmore v. United States,* 264 F.2d 44 (5th Cir.), *cert. denied,* 359 U.S. 994, 79 S.Ct. 1126, 3 L.Ed.2d 982 (1959).

While these courts were construing finality under 28 U.S.C. § 1291, the policies underlying the general rule of finality are in all important respects the same regardless of whether it is a federal or state constitution or statute which a court is considering.

7. This Court has held that an order denying a motion to dismiss an indictment because of an alleged violation of the right to a speedy trial is not appealable. *Commonwealth v. Barber,* 461 Pa. 738, 337 A.2d 855 (1975); *Commonwealth v. Myers,* 457 Pa. 317, 322 A.2d 131 (1974). Unlike Justice NIX, *see* dissenting opinion of Mr. Justice NIX, *post* at 116–117, I agree with the majority that there is a rational basis for disparate treatment of denials of pre-trial motions alleging violations of speedy trial and double jeopardy. *See* Opinion of the Court, *ante* at 104, 105 n. 31.

## II.

Appellant states that although the mistrial in this case was granted at his request, that request was forced upon him by the misconduct of the prosecutor and trial judge; therefore, he argues, the double jeopardy clause should bar reprosecution. Before reaching the merits of this claim, which are later, and correctly, found wanting, the majority addresses the question of "whether [prosecutorial and judicial] 'overreaching' is limited to intentional misconduct or whether it extends to gross negligence on the part of the prosecutor or judge." Opinion of the Court, *ante* at 108. The Court then holds, for the first time in Pennsylvania, that "if a mistrial is ordered on defendant's motion due to intentional *or grossly negligent* misconduct on the part of the prosecutor or judge, reprosecution is barred by the double jeopardy clause." Opinion of the Court, *ante* at 109 (my emphasis). Given the facts of this case and the nature of appellant's claim, there is no reason for reaching and deciding the above issue.

The majority opinion ignores the fact that appellant is not asserting that the prosecutor or trial judge acted in a grossly negligent fashion. To the contrary, appellant quite clearly contends that his motion for a mistrial was a result of intentional prosecutorial and judicial misconduct designed to enhance the opportunity for conviction.[8] Even assuming appellant is arguing that grossly negligent misconduct on the part of the trial judge or prosecution is sufficient to bar retrial following a defendant's request for mistrial, I believe that resolution of the claim

---

8. In his brief appellant states: "Defendant, of course, contends that the actions of both Court and prosecutor, both before and during the first trial, were taken in bad faith and solely to enhance the prosecution's opportunity to convict him." Appellant's Brief at 15. In his Summary of the Argument at p. 8 of his brief, appellant declares: "II. Double jeopardy attaches where a mistrial, although asked for by the defendant, was the result of judicial and prosecutorial misconduct intended to enhance the opportunity for conviction."

is unnecessary in this case. Under the Court's own factual analysis,[9] with which I agree, the prosecutorial and judicial actions which allegedly provoked appellant's mistrial request cannot reasonably be characterized either as intentional *or* grossly negligent. Thus, in my view the Court's purported holding concerning gross negligence, opinion of the Court, *ante* at 109, is gratuitous and mere dictum.

NIX, Justice, dissenting.

On August 25, 1975, Richard Bolden, appellant, and another individual were arrested and charged with the murder of one Robert (Tim) Indyk during the course of a robbery which had occurred on January 10, 1972. The cause was called for trial and the jury selection in the case against Bolden began on January 21, 1976. During the course of the trial, information was elicited which made it necessary for defense counsel to seek to withdraw as counsel for Bolden to enable counsel to testify in response to certain accusations made by a Commonwealth witness. As a consequence of this unexpected development the defense counsel moved for a mistrial which was joined in by appellant.[1] The motion was granted and the jury that had been sworn and empaneled was discharged. Prior to the commencement of the second trial, appellant presented an application for dismissal of the indictment asserting a violation of his right against being placed twice in jeopardy. The motion was denied and an appeal was lodged in this Court accompanied by a stay of proceedings, the latter being granted by a member of this Court. Thereupon, the Commonwealth filed a motion to quash the appeal.

9. Opinion of the Court, *ante* at 109–111.

1. It is argued by appellant that the written motion requesting a mistrial was couched in such terms as it clearly preserved his right to object to a subsequent trial on Fifth Amendment grounds.

Before reaching the merits of this appeal this Court is required to pass upon appellee's motion to quash. Thus, the threshold issue presented is whether the denial of a pre-trial motion to quash an indictment on the grounds of a violation of double jeopardy is entitled to immediate appellate review. I think not and therefore dissent.

Under the Appellate Court Jurisdiction Act of 1970, July 31, P.L. 673, No. 223, art. II, § 204, 17 P.S. § 211.-204 (Supp.1976–77), this Court is given exclusive jurisdiction of appeals from *final orders* of the Court of Common Pleas in felonious homicide cases. In this jurisdiction we have defined a final order, decree or judgment as being one which "terminate[s] the litigation between parties to the suit by precluding a party from further action in that court." *Middleberg v. Middleberg,* 427 Pa. 114, 115, 233 A.2d 889, 890 (1967). *See also, Commonwealth v. Ray,* 448 Pa. 307, 312, 292 A.2d 410, 413 (1972).[2] In criminal cases, we have held that this point of finality is reached only when the judgment of sentence has been entered on the verdict. *Commonwealth v. Myers,* 457 Pa. 317, 322 A.2d 131 (1974); *Commonwealth v. Sites,* 430 Pa. 115, 242 A.2d 220 (1968); *Commonwealth v. Wright,* 383 Pa. 532, 119 A.2d 492 (1956).[3]

The reasoning supporting the view that appeals should be taken only from final orders is not predicated upon

2. Our definition of finality is in accord with that embraced by the federal system:
"[i]n general, a 'judgment' or 'decision' is final for the purpose of appeal only 'when it terminates the litigation between the parties on the merits of the case, and leaves nothing to be done but to enforce by execution what has been determined' ". *Parr v. United States,* 351 U.S. 513, 518, 76 S.Ct. 912, 916, 100 L.Ed. 1377, 1383 (1956).

3. A well-recognized exception to the general rule that an appeal may be taken in a criminal case only from a judgment of sentence is the Commonwealth's highly circumscribed right of appeal where the question raised is purely one of law. *Commonwealth v. Melton,* 402 Pa. 628, 168 A.2d 328 (1961). *See also, Commonwealth v. Gullett,* 459 Pa. 431, 329 A.2d 513 (1974); *Commonwealth v. Bosurgi,* 411 Pa. 56, 190 A.2d 304, cert. denied, 375 U.S. 910, 84 S.Ct. 204, 11 L.Ed.2d 149 (1963).

whim but rather is founded upon the belief that truncated treatment of issues would be inefficient and time-consuming and more importantly would be likely to prejudice one or both parties to a controversy. *Sullivan v. Philadelphia*, 378 Pa. 648, 107 A.2d 854 (1954). To permit the interruption of an ongoing judicial proceeding prior to final judgment would invite an indefinite number of appeals, causing extensive delay and having a disruptive effect on the continuity of the action. *Cobbledick v. United States*, 309 U.S. 323, 60 S.Ct. 540, 84 L. Ed. 783 (1940).

Although commentators and jurists have occasionally questioned the wisdom of a blanket rule prohibiting all interlocutory appeals, this apprehension generally revolves around the applicability of the finality rule to civil matters. *See* "Right of Appeal in Criminal Cases", 34 Mich.L.Rev. 937 (1936).[4] It is moreover conceded that criminal cases must be particularly expedited in order to conform to constitutional guarantees. The United States Supreme Court in landmark case of *Dibella v. United States*, 369 U.S. 121, 82 S.Ct. 654, 7 L.Ed.2d 614, (1962) affirmed the contention that the denial of a pre-trial (pre-indictment) suppression motion was an interlocutory order and thereby quashed an appeal taken from it. The Court explained that "insistence on finality and the prohibition of piecemeal review discourage undue litigiousness and leaden-footed administration of justice, particularly damaging to the conduct of criminal cases." 369 U.S. at 124, 82 S.Ct. at 656–657. *See, In re Grand Jury Proceedings*, 525 F.2d 151 (3rd Cir. 1975). Even

4. In civil cases the rule in this jurisdiction is that an interlocutory order or decree is not appealable unless expressly made so by statute. *Sullivan v. Philadelphia*, 378 Pa. at 649, 107 A.2d at 855 (1954); *Epstein v. Kramer*, 374 Pa. 112, 119, 96 A.2d 912, 914 (1953); *Stadler v. Mt. Oliver Borough*, 373 Pa. 316, 317–318, 95 A.2d 776, 777 (1953).

in the federal system, exceptions to the final judgment rule are aberrations constrained solely to civil matters:

"Despite these statutory exceptions to, and judicial construction of, the requirement of finality, 'the final judgment rule is the dominant rule in federal appellate practice.' 6 Moore, Federal Practice (2d ed. 1953), 113. Particularly is this true of criminal prosecutions. See, e. g., *Parr v. United States*, 351 U.S. 513, 518–521, 76 S.Ct. 912, 916–917, 100 L.Ed. 1377. Every statutory exception is addressed either in terms or by necessary operation solely to civil actions. Moreover, the delays and disruptions attendant upon intermediate appeal are especially inimical to the effective and fair administration of the criminal law. The Sixth Amendment guarantees a speedy trial. Rule 2 of the Federal Rules of Criminal Procedure counsels construction of the Rules 'to secure simplicity in procedure, fairness in administration and the elimination of unjustifiable expense and delay'; Rules 39(d) and 50 assign preference to criminal cases on both trial and appellate dockets." *DiBella v. United States, supra,* 369 U.S. at 126, 82 S.Ct. at 658.

*See also, Will v. United States,* 389 U.S. 90, 88 S.Ct. 269, 19 L.Ed.2d 305 (1967).

The majority in attempting to bolster its position implicitly suggests that the protection afforded by the Fifth Amendment necessarily requires immediate appellate review. It is argued that "[o]nce a defendant is erroneously subjected to another prosecution, neither an acquittal nor appellate reversal of a conviction is sufficient to vindicate his constitutional right not to be placed twice in jeopardy." This reasoning obfuscates the issue before us. If the question raised related to when the objection should properly be interposed this consideration would of course be compelling. However, the majority ignores that in this jurisdiction a motion to quash an indictment on the grounds of a double jeopardy viola-

tion *is in fact a special plea in bar* which must be decided prior to the commencement of the second trial.[5] The question presented here is not whether the objection may be presented and decided prior to the subsequent trial, but rather it is whether the defendant is entitled to immediate appellate review of an adverse ruling upon such a request.

In this context it must be remembered that the United States Supreme Court has recognized that a State is not obliged to provide an appeal at all for criminal defendants. *McKane v. Durston,* 153 U.S. 684, 14 S.Ct. 913, 38 L.Ed. 867 (1894). *See also, Ross v. Moffitt,* 417 U.S. 600, 606, 94 S.Ct. 2437, 2442, 41 L.Ed.2d 341, 348 (1974); *Griffin v. Illinois,* 351 U.S. 12, 18, 21, 27, 76 S. Ct. 585, 590, 592, 594, 100 L.Ed. 891, 898, 900, 903 (1956); *Carter v. Illinois,* 329 U.S. 173, 175, 67 S.Ct. 216, 219, 91 L.Ed. 172, 175 (1946); *District of Columbia v. Clawans,* 300 U.S. 617, 627, 57 S.Ct. 660, 663, 81 L.Ed. 843, 847 (1937); *Murphy v. Massachusetts,* 177 U.S. 155, 158, 20 S.Ct. 639, 640, 44 L.Ed. 711, 713 (1900); *Andrews v. Swartz,* 156 U.S. 272, 275, 15 S.Ct. 389, 391, 39 L.Ed. 422, 423 (1895). Although the Constitution of this Commonwealth provides an absolute right of appeal,[6] the State nevertheless reserves the power to designate the time and the method by which that appeal shall be effectuated and the proscribed procedure will not be held offensive to Federal constitutional standards absent a showing of discriminatory application. *Cf.,*

---

**5.** "Former jeopardy must be specially pleaded in the trial court, and may not be raised under a plea of not guilty . . . entered prior to . . . [a] second trial." *Commonwealth ex rel. Wallace v. Burke,* 169 Pa.Super. 633, 636, 84 A.2d 254, 255 (1951).

**6.** "There shall be a right of appeal in all cases to a court of record from a court not of record; and there shall also be a right of appeal from a court of record or from an administrative agency to a court of record or to an appellate court, the selection of such court to be as provided by law; and there shall be such other rights of appeal as may be provided by law."

*Ross v. Moffitt, supra.* It is therefore clear that there is no Federal constitutional mandate requiring the allowance of interlocutory review of an order denying an asserted double jeopardy violation.

Further, I am not persuaded that there are any compelling reasons why we should, under our supervisory power, deviate from the general rule limiting appeals to final judgments in this instance. It is significant that the cases relied upon by the majority to illustrate the "flexibility" of the final judgment rule in fact were instances where the Court *refused* to depart from the rule. *See, Commonwealth v. Washington,* 428 Pa. 131, 236 A. 2d 772 (1968) (held that an order denying a defendant's motion to suppress a statement was interlocutory and not an appealable order) ; *Commonwealth v. Swanson,* 424 Pa. 192, 225 A.2d 231 (1967) (quashed an appeal from an order denying a change of venue as being interlocutory) ; *Commonwealth v. Bruno,* 424 Pa. 96, 225 A.2d 241 (1967) (a pre-trial order appointing a sanity commission not appealable) ; *Commonwealth v. Byrd,* 421 Pa. 513, 219 A.2d 293 (1966) (a pre-trial order for a neuropsychiatric examination of a person who is under indictment for murder is a nonappealable interlocutory order).

To the contrary, the overwhelming precedent in this Commonwealth is in support of upholding the finality rule in this instance. This Court in *Commonwealth v. Cole,* 437 Pa. 288, 263 A.2d 339 (1970), held that in order denying a motion in arrest of judgment was not appealable where the trial court had awarded a new trial. Certainly, the reasons suggesting an exception in that case were at least as "compelling" as those argued by the majority in support of its position today. Nevertheless, the Court rejected the contention that the circumstances should be viewed as "exceptional" so as to allow an interlocutory appeal.

The majority's decision is also difficult to reconcile in an opinion of this Court in *Commonwealth v. Myers, su-*

*pra,* where in an analogous situation we reached the opposite result. In *Myers* we rejected appellant's arguments for a finding of "exceptional circumstances" and entered an order quashing the appeal. In reaching this result, we relied upon the test of whether "denial of immediate review would render impossible any review whatsoever of [the] individual's claims". *United States v. Ryan,* 402 U.S. 530, 533, 91 S.Ct. 1580, 1582, 29 L.Ed. 2d 85, 89 (1971).[7] In *Myers* the violation asserted was a denial of the accused's right to a speedy trial. The arguments offered by the majority to support its present position are equally applicable to the protections afforded under the Sixth Amendment right to a speedy trial. *See e. g., Commonwealth v. Barber,* 461 Pa. 738, 739–744, 337 A.2d 855, 855–58 (1975) (Dissenting Opinion Roberts, J., joined by Manderino, J.).

Finally, the majority attempts to dismiss in a footnote the decision of this Court in *Commonwealth v. Warfield,* 424 Pa. 555, 227 A.2d 177 (1967), where the precise issue that we are now considering was decided contrary to the majority's position today. *See* Majority Opinion, *ante* at 95 n. 9.[8] In announcing the decision of the Court, Mr. Justice O'BRIEN stated:

"Finally, we note that the defendant's appeal is from an interlocutory order, which order is not appealable,

7. In *Commonwealth v. Myers,* 457 Pa. 317, 322 A.2d 131 (1974), we indicated that this Court's decision in *Commonwealth v. Kilgallen,* 379 Pa. 315, 108 A.2d 780 (1954), should be recognized as being *sui generis.* In that decision we varied from the finality rule because of the unique circumstances of the case.
 "The Court in the Kilgallen case permitted the otherwise interlocutory appeal because the case involved extraordinary circumstances dealing with criminality among public officials, particularly a City Council President and therefore, the effect on the public interest from the nature of the charges made it imperative that the validity of the indictments be decided immediately." Id. at 319–20, 322 A.2d at 132–33.

8. The majority attempts to avoid the pronouncement of *Warfield* by characterizing the double jeopardy protection in Pennsylvania prior to *Benton v. Maryland,* 395 U.S. 784, 89 S.Ct. 2056, 23 L. Ed.2d 707 (1969) as a "highly circumscribed" right and suggesting

unless expressly made so by statute. 'It is likewise well established that as a general rule the defendant in a criminal case may appeal only from the judgment of sentence: . . .' *Com. v. Pollick*, 420 Pa. 61, 215 A.2d 904 (1966); *Com. v. Wright*, 383 Pa. 532, 119 A. 2d 492 (1956). While, as we pointed out in *Com. v. Pollick*, supra, 'This rule is not inflexible and will yield in exceptional cases of great public interest to safeguard basic human rights.', we are here, as there, not concerned with such 'exceptional' circumstances."

*Id.* at 562, 227 A.2d at 181.[9]

Although not applicable to this appeal which was filed before the effective date, Rule 311 of the Pennsylvania Rules of Appellate Procedure (eff. July 7, 1976) reaffirms the strict adherence to the finality rule in criminal cases. Subsection (a) only permits an appeal as of right from an interlocutory order where there is a specific

that the effect of *Benton* has "significantly enhanced" that right. I suggest that while it is true that the *Benton* decision increased the area of applicability of this protection, the nature and quality of the right remained the same. It was the nature and quality of the right that this Court was referring to in *Warfield* when it stated that an asserted double jeopardy claim is interlocutory and should not be entertained until after the entry of a final judgment.

In a further attempt to derogate the authority provided by *Warfield* for the position I urge today, the majority states that *Warfield* was a plurality opinion and therefore possessed no precedential value. Again, I disagree. It must be remembered that in *Warfield* this Court was faced with cross-appeals. The mandate quashing the appeal with which we are concerned on the ground that it was interlocutory, was joined by five members of the Court. Thus, although other portions of the *Warfield* decision may not provide precedential authority, that portion upon which I rely unquestionably does.

9. The majority also refers to the fact that several Circuit Courts of Appeal have held that a denial of a defendant's double jeopardy claim is a "final decision" within the meaning of 28 U.S.C. § 1291 (1966). The persuasiveness of this precedent is questioned since these cases are interpreting a federal statute not applicable to this Commonwealth. Additionally, the majority failed to note that at least one Circuit Court holds a contrary view. *United States v. Bailey*, 512 F.2d 833 (5th Cir. 1975).

statute or rule providing for such a remedy.[10] Experience has demonstrated the wisdom of limiting appeals in criminal cases to final orders. In my judgment the arguments advanced by the majority carving out an exception in this factual situation are unpersuasive. I would quash the appeal as interlocutory.

O'BRIEN, J., joins this dissenting opinion.

10. Subsection (b) of the Rule allows a defendant in a criminal case to file an appeal from an interlocutory order granting him a new trial where his claim challenging the sufficiency of the evidence has been denied. See *Commonwealth v. Liddick,* 370 A.2d 729, 731 (filed March, 1977); *Commonwealth v. Chenet,* 237 Pa. Super. 226, 352 A.2d 502, 504 n. 1 (1976).