459 A.2d 789

**In the Interest of David A. PERRY, Appellant.**

Superior Court of Pennsylvania.

Argued April 28, 1982.

Filed April 15, 1983.

Beck, J., concurred in result.

Carmela R.M. Presogna, Assistant Public Defender, Erie, for appellant.

Dana S. Jones, Assistant District Attorney, Erie, for Commonwealth, participating party.

Before CERCONE, P.J., and BECK and MONTEMURO, JJ.

MONTEMURO, Judge:

This is an appeal from an order of the court of Common Pleas, Erie County, which made an adjudication of delinquency on charges of Simple Assault,[1] Terroristic Threats,[2] False Imprisonment,[3] Theft[4] and Criminal Attempt to Commit Rape,[5] and from the Order of Disposition.

The appellant, David Perry, appeared before Juvenile Court Master, Robert W. Murray, Esquire, in a hearing regarding the above stated charges.[6] He was seventeen

1. 18 Pa.C.S.A. § 2701.

2. 18 Pa.C.S.A. § 2706.

3. 18 Pa.C.S.A. § 2903.

4. 18 Pa.C.S.A. § 901.

5. 18 Pa.C.S.A. § 3921.

6. Hearing was conducted on June 24, 1981 pursuant to Section 6305 of the Juvenile Act, 42 Pa.C.S.A. § 6305, Act of April 28, 1978, P.L. 202, No. 53 § 2, effective, June 27, 1978.

years of age at the time of his hearing. The findings of fact issued by the Master disclose that the appellant was acquainted with one Phyllis Smith on June 11, 1981 and that on that date he and his brother, James, arrived at Mrs. Smith's home to visit her daughter, Kathleen. Kathleen was not home at the time but the boys stayed to help Mrs. Smith with some yardwork. When they finished, the boys went into the house to wash their hands. Mrs. Smith told the appellant and his brother that she had to go to the library and that she would give them a ride to a nearby bus depot.

While in the garage, the appellant grabbed Mrs. Smith from behind and squirted the right side of her face with mace. As she struggled, the appellant ordered his brother to get money, pull the phone plugs and obtain the keys to the car. The appellant then pulled her into the house and down to the basement. Dragging Mrs. Smith across the basement floor, he flipped her onto her back and asserted "I have you down—I'm going to rape you." Mrs. Smith pleaded that she had recently had an operation and that such activity would kill her. The appellant then turned her onto her stomach, pulled her jeans and underwear down below her hips and said, "I'm not going to do it like you think."

Mrs. Smith was able to pull up her clothing. The appellant dragged her from the floor to a bed placing her onto it face down. His brother brought some rope which the appellant used to tie her legs together. Throughout this confrontation he repeatedly assured Mrs. Smith that he did not intend to hurt her but merely to obtain her automobile so that he can get out of town.

Once Mrs. Smith was secured on the bed, the boys removed the money from her wallet and some assorted change from various places in the house. They left the premises in Mrs. Smith's automobile which was recovered the next day. Mrs. Smith was examined by a physician but she did not sustain any serious bodily injury nor did she

require hospitalization as a result of the macing and her struggle.

Based on these findings, the Master recommended [7] that allegations of Aggravated Assault and Criminal Attempt be reduced to the lesser included offenses of Simple Assault and Indecent Assault, respectively. This was done as a result of a demurrer by appellant's counsel at the hearing. The Master sustained the allegations of Terroristic Threats, False Imprisonment and Theft. Pursuant to Section 6305(d) of the Juvenile Act,[8] the lower court issued an order which, for the most part, adopted the Master's recommendations. However, the court rejected the recommended charge of Indecent Assault, concluding, instead, that the findings of fact established beyond a reasonable doubt that the appellant committed the offense of Criminal Attempt to Rape. Counsel for the appellant filed exceptions to the Master's recommendations and to the lower court's conclusions to which the Commonwealth filed a reply. After oral argument on the matter, the court dismissed the exceptions.

The appellant puts forth a number of arguments. He contends that the lower court's acceptance of part of the Juvenile Master's report and its rejection of part thereof, absent a rehearing, violated his constitutional guaranty against double jeopardy,[9] his constitutional right to due process and his rights under Section 6305 of the Juvenile Act.[10] He asserts, also, that the doctrine of collateral estoppel prevents the court from concluding that the appellant committed the offense of Criminal Attempt to Rape and that the evidence produced at the Master's hearing was insufficient to sustain this charge. We address these issues individually.

Following a review of the record and both briefs, we find that the lower court did not deprive the appellant of his

7. 42 Pa.C.S.A. 6305(c).

8. 42 Pa.C.S.A. 6305(d).

9. U.S. Const. amendments, V, XIV; Pa. Const. art. 1, § 10.

10. See note 6, *supra.*

constitutional rights. In *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), the United States Supreme Court explained that the Fifth Amendment guaranty against double jeopardy consists of three separate constitutional protections. It safeguards against (1) a second prosecution for the same offense after acquittal, (2) a second prosecution for the same offense after conviction and (3) multiple punishments for the same offense. Our Supreme Court has emphasized that the Constitution bars the retrial itself not merely the conviction or punishment. *Commonwealth v. Bolden*, 472 Pa. 602, 373 A.2d 90 (1977).

██ In the instant case, we agree with the appellee, Commonwealth, that there was no acquittal, conviction, or multiple punishment to which this constitutional protection would apply. Nor was there an attempt by the Commonwealth or the lower court to retry the appellant. The court merely overruled the Master's grant of the appellant's demurrer with regard to the Criminal Attempt charge. In ruling on a demurrer the proper test to be applied is whether the Commonwealth's evidence and all reasonable inferences therefrom are sufficient to support a finding by the trier of fact that the accused is guilty beyond a reasonable doubt. *Commonwealth v. Duncan*, 473 Pa. 62, 373 A.2d 1051 (1977). The decision to grant or deny a demurrer is therefore ultimately a question of law, not fact. Contrary to what the appellant would have us believe, the lower court did not attempt to alter the factual findings of the Master. Section 6305(d) of the Juvenile Act provides,

> A rehearing before the judge may be ordered by the judge at any time upon cause shown. Unless a rehearing is ordered, the findings and recommendations become the findings and order of the court *when confirmed in writing by the judge*. (Emphasis added.)

When the lower court rejected the Master's recommendation, it modified a mere *legal* determination which we find it empowered to do under this statutory provision.

██ Our denial of the appellant's double jeopardy and due process claim is buttressed by our decision in *In the*

*Interest of Stephens,* 277 Pa.Super. 470, 419 A.2d 1244 (1980) wherein we determined that inherent in the appellant's choice to be heard by a Master is the understanding that his case might have to be heard again by a judge.[11] By the same token we consider David Perry to have recognized, implicitly, that the Master's recommendations were subject to the written approval or confirmation of a judge as indicated in Section 6305(d), *supra.*

■ In conjunction with his constitutional claims, the appellant contends that the judge's order and opinion, having been entered without the benefit of the transcript of the Master's hearing, should not be allowed to stand unless a rehearing is conducted. We support this argument insofar as our judicial system does not condone the practice of evaluating the merits of a particular claim without reference to a complete, accurate and untainted record of the proceedings from which that claim developed. We caution against this and any future practice by the lower court which may discredit an otherwise meaningful review. While, indeed, this was error on the part of the court below, we do not consider it harmful enough to remand the entire case.

In this particular situation, this court has had the opportunity to examine the transcript of the Master's hearing. We have compared the evidence introduced by the Commonwealth with the evidentiary findings of the Master and we perceive no difference. Moreover, there is no dissimilarity between the Master's findings of fact and those facts presented in the lower court's opinion. Had there been a factual dispute to consider or had the judge, in rejecting the Master's recommendation, modified these factual determinations, then a rehearing would have been in order. As this

11. In this case the defendant argued the illegality of Pennsylvania's procedure with regard to Master's hearings. Under attack, specifically was 11 P.S. § 50–301(b) which states:

> Before commencing the hearing the master shall inform the parties who have appeared that they are entitled to have the matter heard by the judge. If a party objects, the hearing shall be conducted by the judge.

is not the case, we believe that a rehearing at this stage would be an exercise in futility. This is true especially in light of the appellant's failure to request a hearing before a judge as provided by Section 6305 and his subsequent failure to address any factual conflicts on appeal.[12]

We do not read anything in Section 6305 that explicitly mandates a rehearing and we do not consider the Master's recommendations as automatically and unconditionally binding merely because there was no rehearing on the matter. It is clear that these recommendations must be confirmed by a judge before they become effective as court orders. The lower court, in this case, accurately defined these recommendations, simply, as the application of the facts as they were *pre-determined* by the Master, to the pertinent legal principles. In compliance with Section 6305(d), the judge decided not to confirm the Master's application regarding the charge of Criminal Attempt and absent any factual dispute or modification, we find that the use of a transcript or rehearing, in this particular case, would have been inconsequential to this decision.

We also reject the appellant's assertion that the judge's determination is precluded by the doctrine of collateral estoppel. In *Ashe v. Swenson*, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970), the Supreme Court definitively applied the principle of collateral estoppel to criminal matters stating:

> [Collateral estoppel] means simply that when an *issue of ultimate fact* has once been determined by a *valid and final judgment*, that issue cannot be litigated between the same parties in any future lawsuit.

**12.** The lower court's error is also considered harmless in light of the fact that at the Master's hearing, the appellant presented a defense in which he and his brother testified as to their understanding of the events of the day in question. (Notes of Testimony, p. 42, *et seq.*, June 24, 1981) In ruling on the demurrer, the court, therefore, did not deprive the appellant of his right to be heard. However, had this been a situation wherein the appellant did not raise a defense, a rehearing would have been mandatory before the judge could have issued further orders.

397 U.S. at 443, 90 S.Ct. at 1194, 25 L.Ed.2d at 475 (emphasis added). This doctrine does not apply to the proceedings that are presently questioned by the appellant. We stated, above, that the nature of the judge's determination was legal, not factual. His conclusion that the appellant is guilty of Criminal Attempt to Rape instead of Indecent Assault was based on the unaltered findings of fact by the Master. Because there was no factual issue subjected to relitigation, we cannot allow the appellant's argument to stand.

 Furthermore, collateral estoppel should not be applied where there has been no valid and final judgment. By statute, the Master's recommendation is not considered a valid and final judgment until it is confirmed by the judge.[13] The judge's reevaluation certainly does not constitute a relitigation of the matter. Rather, it is a final step in the prosecution of the appellant. We hold that this procedure does not conflict with the doctrine of collateral estoppel.

 Finally, the appellant insists that the evidence produced at the hearing was insufficient to constitute the offense of Criminal Attempt to Rape. We disagree, the charge of Criminal Attempt is governed by 18 C.P.S.A. § 901(a) which states:

### § 901. Criminal attempt

(a) **Definition of attempt**—A person commits an attempt when, with intent to commit a specific crime, he does any act which constitutes a substantial step toward the commission of that crime.

Moreover the crime of Rape is defined by 18 C.P.S.A. § 3121 as follows:

### § 3121. Rape

A person commits a felony of the first degree when he engages in sexual intercourse with another person not his spouse:

(1) by forcible compulsion;

---

**13.** See n. 8, *supra.*

(2) by threat of forcible compulsion that would prevent resistance by a person of reasonable resolution;

(3) who is unconscious; or

(4) who is mentally deranged or deficient that such person is incapable of consent.

The appellant argues that he had abandoned his intent to rape Mrs. Smith which is a defense to the charge of Criminal Attempt. The definition of this defense is set forth in 18 C.P.S.A. § 901(c) which provides:

**(c) Renunciation.—**

(1) In any prosecution for an attempt to commit a crime, it is a defense that, under circumstances manifesting a voluntary and complete renunciation of his criminal intent, the defendant avoided the commission of the crime attempted by abandoning his criminal effort, and, if the mere abandonment was insufficient to accomplish such avoidance, by taking further and affirmative steps which prevented the commission thereof.

(2) A renunciation is not "voluntary and complete" within the meaning of this subsection if it is motivated in whole or in part by:

(i) a belief that circumstances exist which increase the probability of detection or apprehension of the defendant or another participant in the criminal enterprise, or which render more difficult the accomplishment of the criminal purpose; or

(ii) a decision to postpone the criminal conduct until another time or to transfer the criminal effort to another victim or another but similar objective.

We defer to the Master's factual findings which disclose that the appellant not only had informed Mrs. Smith of his intent to rape her but had gone so far as to pull her pants and underwear below her hips. We perceive this to be a significant step toward the commission of the Crime of Rape as defined, above. The appellant's abandonment of his criminal intent was not voluntary as the record indicates that he and his brother were anxious to leave town and that his fear of being caught in the act by Mrs. Smith's daughter

was eminent.[14] In light of these findings we hold that there is more than enough evidence to constitute the offense of Criminal Attempt to Rape.

The orders of the lower court are affirmed.

BECK, J., concurs in the result.

14. Notes of Testimony, p. 18, June 24, 1981. Mrs. Smith had warned appellant that her daughter would be home at any moment. Throughout her testimony, she had indicated that the appellant and his brother were in a hurry. See e.g. notes of testimony, p. 21, June 24, 1981.